# EXHIBIT D

```
 1              UNITED STATES DISTRICT COURT

 2                 DISTRICT OF CONNECTICUT

 3   _____

 4                                    )
     STEVEN MILNER and HEIDI CANNON,  )
 5                                    )
                      Plaintiff,      )
 6                                    )
                 vs.                  ) 3:02CV1929 (JCH)
 7                                    )
     LESTER DUNCKLEE, individually and)
 8   official capacity,               )
     BRYAN SCHNEIDER, individually and)
 9   official capacity,               )
     MICHAEL PECKHAM, individually and)
10   official capacity,               )
                                      )
11                    Defendants.     )
                                      )
12   _____)
```

Deposition of MICHAEL W. PECKHAM, taken pursuant to the Federal Rules of Civil Procedures, at the law offices of Robinson & Cole, Eugene O'Neill Boulevard, New London, Connecticut, before Sarah J. Miner, L.S.R., a Notary Public in and for the State of Connecticut, on August 29, 2005, at 10:50 a.m.

1    Q.  Do you know what the purpose is of the 4th
2  Amendment?
3    A.  Just as I stated.
4    Q.  Why, do you know why it was enacted?
5    MR. KARSTEN:  Object to the form.
6  BY MR. MILNER:
7    Q.  Do you know why the 4th Amendment was
8  enacted?
9    A.  No, I didn't get into that.
10    Q.  I am trying to figure out how far back your
11  education went.
12    Do you recall any specific questions on your
13  test or any specific teachings of a civil capias?
14    A.  Any specific questions on the test, on which
15  test?
16    Q.  Any test you have taken to become a police
17  officer.
18    A.  I don't recall any specific questions, no.
19    Q.  I would like you to look at this document,
20  and just identify it as your interrogatories that was
21  served.
22    A.  It is.
23    Q.  I would like you to look at Question Number
24  13.  What education or certification have you received
25  to become a police officer?  Your answer is, Municipal

```
 1         Q.  They are.  So the instructor is an employee
 2  of the town?
 3         A.  Yes.
 4         Q.  In that training that has been done by the
 5  town, by this instructor that you just stated, has any
 6  of the classes pertained to a capias?
 7         MR. KARSTEN:  Object to the form.  You can
 8  answer.
 9         THE WITNESS:  Not that I can recall.
10  BY MR. MILNER:
11         Q.  Prior to September 30th '02, did you even
12  know what a capias was?
13         A.  I knew it was an arrest warrant.
14         Q.  You knew it as an arrest warrant, is that
15  your answer?
16         A.  Yes, correct.
17         Q.  I would like you to take a look at
18  Plaintiff's Exhibit 2, does that look like a fair
19  representation of the capias that was served on the
20  night of September 30th, '02?
21         A.  It appears to be.
22         Q.  At the top of the page in the upper left-hand
23  corner does it use the word arrest warrant?
24         A.  No.
25         Q.  What word appears there?
```

1   me, the case law that you have stated --
2       A.  I don't believe there is any case law.
3       Q.  And your answer to Question 4, what case law
4   are you referring to, federal and Connecticut case
5   law.
6       A.  As far as specific case law goes, I don't
7   have specific case law.
8       MR. KARSTEN:  The witness is in the middle of
9   an answer.
10      THE WITNESS:  What is your question?
11  BY MR. MILNER:
12      Q.  My question is, in reference to question
13  Number 4 of your interrogatories, your answer is
14  federal case law, and Connecticut case law, what case
15  law are you referring to in the aid of the service of
16  a civil capias?
17      A.  Well, in answering the question, a civil
18  capias would be the same thing as an arrest warrant.
19  A capias and arrest warrant at the time was the same
20  thing, and we went under the same case law that you
21  would for arrest warrant, Connecticut case law,
22  federal case law, case law that is established.  I
23  can't think of specific cases at the moment.
24      Q.  How did you know that a capias and arrest
25  warrant are the same thing?

```
 1       A.  If you read an arrest warrant the word
 2  "capias" is used within that.
 3       Q.  You are stating that an arrest warrant uses
 4  the word "capias"?
 5       A.  Correct.
 6       Q.  On the face?
 7       A.  Maybe not on the face sheet when you explain
 8  to somebody when they have to go to court an arrest
 9  warrant or capias will be issued.  A capias is in the
10  body, and appears to be the same thing as an arrest
11  warrant.
12       Q.  You are stating that it appears to be.  But
13  do you have any case law to back that up?
14           MR. KARSTEN:  Object to the form.
15  BY MR. MILNER:
16       Q.  Do you have any case law to back up that a
17  capias and an arrest warrant are one and the same?
18           MR. KARSTEN:  Object to the form.
19           THE WITNESS:  To be determined I suppose.
20  BY MR. MILNER:
21       Q.  Pardon me?
22       A.  It is to be determined, I suppose.
23       Q.  Well, you are of the opinion that a capias
24  and an arrest warrant are identical, correct?
25           MR. KARSTEN:  Object to the form.
```

```
 1            THE WITNESS:  Correct.
 2   BY MR. MILNER:
 3       Q.  He answered the question.
 4            MR. KARSTEN:  Object to the form, yes, he
 5   did.
 6   BY MR. MILNER:
 7       Q.  So in your teachings or learning somewhere
 8   along the way to become a police officer, did someone
 9   teach you that a capias and an arrest warrant are one
10   and the same?
11       A.  Again, I can't answer that.
12       Q.  I guess my question is, where did you come up
13   with this notion that a capias, and arrest warrant are
14   one and the same?
15       A.  I already explained that.  I answered it.
16       Q.  Just on the face of the arrest warrant, was
17   that your answer?
18            MR. KARSTEN:  Object to the form.
19            THE WITNESS:  No.
20   BY MR. MILNER:
21       Q.  Well, could you repeat the answer?
22            MR. KARSTEN:  He is not going to go back and
23   answer again a question he has answered before.  If
24   you want to ask him a new question, you can do that.
25   The transcript will reflect what his testimony was.
```

1        MR. KARSTEN: Object to the form.

2        THE WITNESS: I don't think there is standard

3   operating procedure as far as that goes.

4   BY MR. MILNER:

5        Q.  But you did just testify that you haven't

6   served a capias in the last five years, correct?

7        A.  That is not what I said.  I think I am

8   confused by the question, ask me again.

9        Q.  I asked you if you had served a capias in the

10  last five years.

11       A.  Directly serve it?  I don't believe I have.

12       Q.  You said, no.

13           On the night of September 30th, '02, how were

14  you called to aid Mr. Dunklee?

15       A.  How was I called to aid Mr. Dunklee?

16       Q.  Yes.

17       A.  We were advised -- I was advised by Sergeant

18  Johnson that we would be assisting, which we commonly

19  do, an agency assist, assisting Sergeant Duncklee with

20  an arrest warrant.

21       Q.  Sergeant Johnson specifically used those

22  words, arrest warrant?

23       A.  I believe so, yes.

24       Q.  And where were you at the time that you were

25  called?

```
 1       A.   I was.

 2       Q.   So then you did leave that room?

 3       A.   I didn't follow him into the garage, no.

 4       Q.   Well, how far into the house did you go?

 5       A.   We stayed with Mrs. Cannon, I believe, we

 6  stayed with her, and he asked her if he could look in

 7  the garage, and she said he could, and so he did.

 8       Q.   Ms. Cannon stayed in that foyer area?

 9       A.   She did.

10       Q.   And Mr. Dunklee went to the garage?

11       A.   He did.

12       Q.   How would you know he opened the garage, and

13  looked in the garage if you were standing in the

14  foyer?

15       A.   I heard the door open, and he asked her if he

16  could look in the garage, she said he could look in

17  the garage, maybe some of it is an assumption.

18       Q.   So it is your testimony you didn't leave the

19  foyer area?

20       A.   Not that I can recall, not at that point.

21            MR. KARSTEN:  Objection, that was not his

22  testimony.

23  BY MR. MILNER:

24       Q.   Well, you just stated at the point Mr.

25  Dunklee arrested me, at what point was I arrested?
```

1  training as to the service of a civil capias?
2       A.  In conjunction with arrest warrants, I would
3  have to answer that as, yes.
4       Q.  I don't think that is my specific question.
5  I am not asking about arrest warrants, I am asking
6  about civil capiases.  Have you had any specific
7  training as to how to serve a civil capias?
8       A.  I believe it would be an arrest warrant, so
9  the training would come underneath that avenue of an
10 arrest warrant.
11      Q.  Is your answer that you can serve an arrest
12 warrant and a capias similarly?
13          MR. KARSTEN:  Object to the form.
14          THE WITNESS:  I don't understand what you
15 mean.  You asked me a question, and I answered it,
16 and you are rephrasing my answer.
17 BY MR. MILNER:
18      Q.  No, I am not, I am just trying to understand
19 your answer.  What I am trying to understand is
20 whether or not your training was specific to the
21 service of a civil capias, and your answer was, under
22 an arrest warrant.  I am not asking you that question.
23 What I am asking you is, whether or not you had
24 specific training as to how to serve a civil capias?
25      A.  And I answered it by saying underneath an

C E R T I F I C A T E

I hereby certify that I am a Notary Public, in and for the State of Connecticut, duly commissioned and qualified to administer oaths.

I further certify that the deponent named in the foregoing deposition was by me duly sworn and thereupon testified as appears in the foregoing deposition; that said deposition was taken by me stenographically in the presence of counsel and reduced to typewriting under my direction, and the foregoing is a true and accurate transcript of the testimony.

I further certify that I am neither of counsel nor related to either of the parties to said suit, nor of either counsel in said suit, nor am I interested in the outcome of said cause.

Witness my hand and seal as Notary Public the 17th day of September, 2005.

_____
Notary Public

CSR NO. 00223
My Commission Expires:
November 31, 2007