UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2006 FEB 23 P 2: 30

U.S. DISTRICT COURT
BRIDGEPORT, CONN.

STEVEN MILNER                    :    3:02CV1929(SRU)

V.                               :

LESTER DUNCKLEE, ET AL           :    FEBRUARY 20, 2006

MEMORANDUM OF LAW IN SUPPORT
OF OBJECTION AND REPLY TO DUNCKLEE'S
MOTION FOR SUMMARY JUDGMENT

**INTRODUCTION**

Defendant Duncklee being a State Marshal on September 30, 2002, served a valid capias on the herein plaintiff, Steven Milner on that date. Plaintiff Milner has never disputed or challenged that the civil capias was valid. The pivotal issue in the present action is not the issuance of the capias, its validity, the background of why the capias was issued, but rather the method of service on the plaintiff by the herein defendants and their violation of clearly established law and violation of the constitutional rights of the plaintiff.

The plaintiff objects to qualified immunity for Defendant Duncklee as he has violated clearly established law, acted unreasonably, and knew or should have known that his actions were violative of the law and unreasonable under the circumstances. As Duncklee has stated he was a 22 year veteran of the Connecticut sheriff and marshal departments. Duncklee sets forth the unfounded theory that a capias is equivalent to an arrest warrant. This theory is unfounded in Connecticut statutes, case law, and at common law. As stated and supported herein, a capias is not an arrest warrant as

1

defined by the Constitutional Fourth Amendment, and therefore is not treated as an arrest warrant. The capias is issued to 'bring the body to court'. It does not charge any offense. The arrest warrant charges an offense, arrests the person, and incarcerates him with a bond set. The criteria for obtaining an arrest warrant is far different from obtaining a capias. Connecticut statutes and common law have preserved the distinction between an arrest warrant and capias from England since the inception of the colonies.

**ARGUMENT**

**A. Reply to Undisputed Facts**

In Duncklee's Memorandum (A. Undisputed facts), paragraph 2-6 should be discredited and disallowd by this court as irrelevant and immaterial to the present action. Plaintiff has never disputed or challenged the validity of the capias. These paragraphs serve no purpose in the present action other than to disparage the plaintiff.

Equally, this court should disallow the affidavit of Attorney Gary Traystman as irrelevant and immaterial to the present proceeding. Attorney Traystman is unethical, untruthful, and presents no facts that are relative to the present action. (See affidavit of Steven Milner, attached). Gary Traystman represented the plaintiff's current wife, Heidi Cannon, in a dissolution action in January 2006. Cannon was a plaintiff in the present action before this court, only withdrawing in August 2005, after hiring Atty. Traystman to represent her in the divorce against plaintiff Milner. Therefore, Atty. Traystman has a vested interest in disparaging the plaintiff with untrue, irrelevant, and immaterial statements. Atty. Traystman's affidavit should be rejected.

Plaintiff Milner filed for divorce against Cannon in August 2004. Stating(mem. pg.4) "Milner and Cannon were having a glass of wine in front of the fireplace in the kitchen." (Cannon depo. at 22) This statement is immaterial to the present action. Whether Milner was at the residence or not is irrelevant and immaterial to the present action. Stated (mem. pg.5)"Cannon knew that Milner was inside the residence, but tried to protect him from the marshal." (Cannon depo. at 31-32) This statement is irrelevant and immaterial. Stated (mem. pg. 5) "Duncklee handed Cannon the capias, who *looked* at it while they were still at the door." (Id. at 29, Duncklee Depo, at 63). Further stating (mem, pg 5), "After *reading* the capias..... " Cannon never admitted to reading the capias. (Cannon depo, at 29) Cannon stated she stepped back from the door.(Cannon depo.at 31) Cannon stepping back from the door does not give the defendant officers the right to enter a home, even if the door were wide open. United States v. McCraw, (1990) CA 4 Va. 920 F2d 224. Sumdum v. Alaska, 1980 Alaska, 612 F2d 1018.

Cannon never gave consent or allowed the officers in the home, Duncklee pushed the door open and came in after Cannon no longer resisted. (Cannon depo at 69)Cannon was unaware of her rights the moment Duncklee opened the door wider to come in.(Cannon depo at 58, 59)

Duncklee was yelling to "Let me in" (Cannon depo at 27,29) As stated in the Amended Complaint Claim I, (par.1), "Ms. Cannon was frightened, panicked, and in shock." Duncklee used force to keep the door from closing. Duncklee admitted to opening the door.( Duncklee depo. at 40)

Duncklee used coercive force to gain entry to the plaintiff's home by yelling "let me in",(Cannon depo. at 27,29) using the words 'arrest warrant', frightening the occupant (amended complaint, par.1), knowing he had a civil capias and knowing the purpose of the capias. (Duncklee depo at 27,29,32) Duncklee admits that he used the word "capias" in requesting police assistance on September 30, 2002. (Duncklee depo. at 27, 29) Duncklee did not refer to the capias as an 'arrest warrant'in speaking with the police officers. Duncklee knew and understood the distinction between a capias and arrest warrant on September 30, 2002. Duncklee admits to "intermingling" the words capias and arrest warrant. (Duncklee depo. at 47). The only purpose that can be drawn from Duncklee intentionally intermingling the use of the words capias and arrest warrant is to frighten, confuse, threaten, and gain access to private citizen's homes which otherwise he would not be allowed to enter by law. Duncklee has done this illegal method of service for years (Duncklee depo. at 26) knowing by his taking of an oath to uphold the Constitution (CGS 1-25) that what he was doing was illegal and violating unsuspecting person's rights. Duncklee's request for summary judgment and qualified immunity should be denied.

## B. Reply to Procedural Posture

Agreed

## Reply to II. ARGUMENT

### A. Standard For Granting Summary Judgment

Rule 56(c)of The F.R.Civ.P., a party is entitled to summary judgment if " there is no genuine issue as to a material fact and ....the moving party is entitled to judgment by law."

4

The only disagreement the parties herein have are to facts that are not material to the present case. <u>Anderson v. Liberty Lobby, Inc.</u> 47 US 242 (1986) states; " is whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

The plaintiff contends that there is not *sufficient* disagreement as to material facts. The facts mitigate in favor of the plaintiff. The facts are one-sided in favor of the plaintiff, that the only dispute are questions of law, which the plaintiff contends are in his favor.

The defendants have agreed that Duncklee opened the door, (Duncklee depo. at 40) that no arrest warrant was obtained, (Schneider depo. at 10) That consent (Cannon depo. at 27) or exigent circumstances did not exist, (Duncklee responses to interrogatories #13,1/21/05) Exhibit 'A' attached, (Cannon depo. at 27) That the plaintiff was seized inside his home. (Duncklee depo. at 48-52). The foregoing are the pivotal and only material facts in the present action.

The plaintiff submits that the Undisputed Facts submitted to this court dated February 6, 2006 by Defendant Duncklee, numbers 7 thru 15, 16 thru 28, 37, 43, 44 are immaterial and irrelevant to this proceeding. The only material dispute the parties have are matters of law, i.e. is a capias a valid arrest warrant supported by the fourth amendment?, did these defendant's violate the plaintiff's constitutional rights and state law protections? And are these defendants entitled to a defense of qualified immunity? All questions of law. However, Duncklee is presenting a defense of qualified

5

immunity to have this action dismissed. Plaintiff vehemently argues that defendant Duncklee is not entitled to qualified immunity for the following reasons.

**Reply to B. Duncklee Is Entitled To Qualified Immunity For Acts Alleged In Plaintiff's Revised Complaint.**

The standard in <u>Harlow v. Fitzgerald</u> 457 U.S. 800, 818(1982) must be followed. As stated therein, the court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

Duncklee was a governmental official performing a discretionary function. The plaintiff contends that Duncklee abused that discretion by entering the plaintiff's home without consent or exigent circumstances. Further, Duncklee would be shielded from liability if his conduct had he not violated clearly established law or constitutional rights. Duncklee has an insurmountable task of convincing this court that the Fourth and Fourteenth Amendments of the Constitution were not clearly established on September 30, 2002. <u>Saucier v. Katz,</u> 121 S.Ct. 2151 (2001) stated; This decision commands officials to look for a controlling decision on-point or a consensus of persuasive authority before acting in a manner that could give rise to a lawsuit alleging that the officer's conduct was unlawful in the situation he confronted. If, after Duncklee took an oath (CGS 1-25) to uphold the Constitution and the rights of others, he chose not to read, understand, or adhere to the clearly established law, then he has violated the plaintiff's rights by entering his home on September

6

2002, without an arrest warrant, consent or exigent circumstances as required by clearly established law. Duncklee fails the objectively reasonable test, knowing it was unreasonable to enter a private home without an arrest warrant, consent, or exigent circumstances. Duncklee wants this court to believe that if a frightened, panicked, Ms. Cannon stepped back from a door that he was preventing from being closed, (Duncklee depo. at 39)which Ms. Cannon had every right to close, and not knowing her rights at the time, (Cannon depo. at 58-59) after refusing Duncklee's yelling to

"let him in", (Cannon depo. at 29, 56)and repeatedly telling Duncklee he could not come in, that he had a right, duty, or otherwise to enter the plaintiff's home under the law. As a government official, Duncklee knew or should have known that he was not in possession of an arrest warrant, and that it was not objectively reasonable to enter the plaintiff's home. Taking the standard in <u>Anderson v. Creighton</u>, 483 US 635 (1987). "A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." The plaintiff's right under the Fourth Amendment could not be more 'sufficiently' clear. Given that an arrest warrant was not obtained, it could not be more 'sufficiently' clear that entry into the plaintiff's home by Duncklee was unreasonable. As Duncklee stated, "I have done hundreds of these." (Duncklee depo. at 26). Referring to a 'capias'. It would be unreasonable to believe that Duncklee has served 'hundreds of these' in the same manner as he served the plaintiff on September 30, 2002.

Taking Duncklee's analogy of the case law,(mem. at 9) he fails the test of being entitled to qualified immunity. Huminski v. Corsones, 386 F.3d 116, 143 (2d Cir. 2004) "to be entitled to qualified immunity, the defendant has the burden of proving, first, that his conduct fell within the scope of his official duties." Second the court "must assess whether the defendant's actions violated clearly established rights of which an objectively reasonable official would have known." Ehrlich v. Glastonbury, 348 F.3d 48, 60 (2d Cir. 2003). Finally, even if the defendant's belief was mistaken,"if the defendant reasonably believed that the entry did not violate the plaintiff's rights, he is entitled to qualified immunity."

First, the only action of Duncklee's that fell within the scope of his duties was being handed the capias to serve, knocking on the plaintiff's door, and announcing who he was. The plaintiff maintains the further action by Duncklee was violative of the plaintiff's rights. Secondly, as stated above Duncklee violated the plaintiff's clearly established Constitutional rights under the Fourth Amendment, by entering without a warrant, and the Fourteenth Amendment, of unequal treatment, and under the 14th due process clause of not obtaining an arrest warrant or search warrant, and State law protections by false representation claiming he had an arrest warrant to gain entry, and trespass, knowing he did not have the legal right to enter or consent. Finally, Duncklee could not of had a reasonable belief that entry did not violate the plaintiff's rights. As a State Marshal, he knew he does not serve criminal arrest warrants,(Duncklee depo. at 14) and that Connecticut law distinguishes between criminal and civil arrests. (Duncklee depo. at 59). Duncklee had specific

training in Constitutional law, search and seizure, and capiases, by
certified Connecticut instructors. (Duncklee depo. at 9-13). It is not
reasonable to believe that Duncklee had a belief that his actions of
entry into the plaintiff's home were not violating the plaintiff's
rights on September 30, 2002. It would only be after the commencement
of the present action against Duncklee that his belief could change
for him to state, now, that he had a reasonable belief on September
30, 2002, that he was not violating the plaintiff's rights.

**Reply to B.1. Duncklee's Conduct Fell Within The Scope Of His Duties**

As stated above, the plaintiff maintains that the only conduct
that fell within Duncklee's duties, was being handed the capias to be
served, knocking on the door, and announcing who he was. All of
Duncklee's other actions of entry, searching the home, seizing the
plaintiff, falsely representing he had an arrest warrant, and
trespassing violated the plaintiff's rights. These action of
Duncklee's are not discretionary. These are protected rights of the
plaintiff's under Constitutional and State Law. Duncklee's argument
concerning the sheriff system (Mem. pg. 10) is irrelevant and
immaterial to the present action.

**Reply To B.2. Duncklee Did Not Violate Plaintiff's Clearly Established**
**Constitutional Rights.**

Duncklee's argument (mem. pg.11) concerning the issuance of the
capias by The Superior Court is irrelevant and immaterial to the
present action. The plaintiff has never challenged that the capias was
not valid. The pivotal argument is whether a capias is an arrest
warrant within the meaning and protection of The Fourth Amendment. The

nucleus of Duncklee's argument is that a capias is a valid arrest warrant within the meaning of the Fourth Amendment. The plaintiff maintains it is not an arrest warrant. (see B 2a below)

Duncklee convolutes the plaintiff's reference to CGS 54-2a. The plaintiff points out that Connecticut statutes distinguishes the words 'arrest warrant' from 'capias'. Within the criminal statute 54-2a, the statute clearly states that under a criminal arrest (54-2a(a)(1) a bench warrant can issue upon probable cause supported by affidavits that an offense has been committed. This would be a criminal arrest warrant due to the fact that the provisions of this section adhere to the standard in the Fourth Amendment. Within the same 'criminal' statute is a provision ,54-2a(a)(3), that a capias can issue for witnesses or defendants who violate an order of the court regarding any court appearance. Non-appearance is a civil matter. Within the criminal statute is a civil provision to, as the word defines, 'bring the body to court'. The capias provision in the criminal statute does not impose a criminal offense, or impose any punishment, as stated the 'witnesses' named in the statute are not the accused. The capias is civil in nature. Connecticut has preserved the distinction between criminal arrest warrants and capiases. 54-2a(a)(3)does not state that an 'arrest warrant' can issue for non-appearance.

Duncklee's counsel has misread the statute. Duncklee's argument of drawing "artificial lines" between capiases and warrants(mem. pg 13)should be rejected, due to the fact Connecticut separates and distinguishes between the two. CGS 54-2a(c) clearly distinguishes between a warrant and capias. The statute states:

"In *lieu of a warrant* for the rearrest of any defendant who fails
to appear for trial at the place and time specified or on any
court date thereafter the court, judge or judge trial referee
may issue a *capias*."

Additionally, the plaintiff's argument that Connecticut uses two
different and distinct forms for the issuance of a capias and arrest
warrant, makes clear that Connecticut never intended to change the
common law for a capias to be equivalent to an arrest warrant.
Duncklee's argument of 'artificial lines' should further be rejected,
as the Connecticut forms are clearly different.

Connecticut statute further draws a clear distinction between an
arrest warrant and capias. 46b-231(m)(1)and 46b-231(m)(7) allows a
family support magistrate to issue a capias mittimus to arrest an
obligator or witness and bring him before the court for
non-appearance. Clearly a civil application for a capias. Clearly not
supported by the provisions of the Fourth Amendment, by which warrants
only issue by probable cause, supported by affidavits, signed by an
impartial magistrate. Duncklee violated the plaintiff's Fourteenth
Amendment rights under the due process clause by not obtaining an
arrest warrant or search warrant. Additionally, he violated the
plaintiff's Fourth Amendment rights by entering the plaintiff's home
without a warrant, consent, or exigent circumstances. Duncklee has a
heavy burden of convincing this court that the Amendments to the
Constitution and related State law was not clearly established on
September 30, 2002. It is indisputable that all the related law was
clearly established on that date.

11

**Reply to B.2.a Historical Origins Of A Capias**

Black's Law Dictionary defines, in addition to Duncklee's definition, Latin "that you take". Contrary to Duncklee's argument(mem. pg. 14) the capias issued against the plaintiff was for a civil proceeding and for civil non-appearance. The plaintiff was not charged with a crime. Duncklee's argument (mem. pg 15) that various judges have 'intermingled' the words warrant and capias should be rejected. A judge's statements are not rulings on a specific issue. Now that this issue of whether a capias is a valid arrest warrant within the meaning of the Fourth Amendment is before this court, a *ruling* will be of importance. State of Wisconsin v. Micheal J. Kryzaniak, 2001 WI App.44, 241 Wis. 2d 358. the stated that

"the capias does not rise to the level of an arrest warrant." Duncklee argues that 54-2a was misread by the plaintiff. However, as discussed above, 54-2a is a criminal statute with the provision for civil relief to bring a witness to court. The capias suggested in 54-2a(a)(3) does not impose criminal penalties. The plaintiff disagrees with counsel's reading of the 54-2a statute (mem.pg.16) The listed powers of the statute are not 'criminal process.' Counsel intertwines within the 54-2a statute that a bench warrant is one in the same as a capias, in that probable cause is required or witnessed by the court in the issuance of a capias. Probable cause within the meaning of the Fourth Amendment is in relationship to a crime being committed, not civil disobedience.

Duncklee's argument(mem. pg 18) that the Connecticut legislature once used the words 'warrants of capias'in the statutes should be rejected. As stated the 'warrants of capias' were used with the same

12

criteria today, to bring the person to court. Interesting, the location and the wording in the statute were separate from 'warrants of arrest', suggesting the legislature did not intend for the capias and arrest warrants to be one in the same. Duncklee's argument is unconvincing.

Duncklee's reference to Judge Ment's comments (mem.pg.19) before the Judiciary Committee, pertain to issuance of capiases in a criminal proceeding to bring the defendant to court. A civil proceeding to force the initial non-appearance. Counsel's argument concerning Judge Ment's "two arrow" theory is misguided. The Judge was not imposing a second "arrow" for criminal charges, but a civil remedy for non-appearance. The second 'arrow' was to bring the defendant to court for the second time. His reference to rearrest was with the capias. The plaintiff has maintained that a capias does result in the person named being arrested, but not within the meaning of the Fourth Amendment.

**Reply to II.B,2,c The Issuance Of A Capias Satisfies The "Probable Cause" Requirement In The Fourth Amendment.**

The plaintiff submits that Duncklee's argument that a capias satisfies the "probable cause" requirement of the Fourth Amendment is completely misguided. Probable cause has to be confirmed through oath or affidavit to convince a judge to sign the warrant, a very different criteria for obtaining a capias. A capias is a discretionary function of the judge. The capias is civil in nature, therefore not requiring that probable cause that a crime has been committed to issue a capias under the Fourth Amendment. The Fourth Amendment speaks to criminal

13

activity. The Fourth Amendment states in pertinent part; "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." The capias does not require probable cause or oath to be issued, therefore it is not a warrant. Duncklee would like this court to believe that if a judge witnesses that a defendant or witness is not in court at a specific date and time that the judge has established "probable cause". There is no probable cause that a crime has been committed. The probable cause the judge has...is to issue a capias...not probable cause needed as described by the Fourth Amendment. As stated in Ullmann v. State, 230 Conn. 698 (1994), "By analogy, the capias, being intended to coerce the appearance of a person in court, would be a civil arrest, while an arrest warrant, starting the process by which a person might be punished, would be a criminal arrest." As stated in International, UMWA v. Bagwell, 512 US 821, 828-829 (1994), "While the consequences of the person not adhering to the court's orders in connection with the civil claim could involve incarceration, it is very clear under the law the coercive incarceration under the court's contempt power is civil in nature rather than criminal." As stated in DiPalma v. Wiesen, 163 Conn. 293, 298 (1972). "Issuance of a capias is in the discretion of the court."

There are two primary purposes for issuing a capias, both of which involve bringing someone to court by taking the person into custody. First, when a witness fails to appear in court in response to a subpoena a capias may be issued "to arrest the witness and bring him before the court to testify." CGS 52-143(e), State v. Frye, 182 Conn. 476, 483 (1980). Secondly, in the family relations area, a capias may

be issued when a person required to pay a child support order has failed to appear in court following service of a summons, subpoena or citation. CGS 17b-745(a), 46b-231(m)(1).

The capias **may** be issued by a judge, is a discretionary act by the judge. Probable cause is not required to issue a capias. Therefore, the issuance of a capias does not require the Fourth Amendment consideration of probable cause. In Ulmann, supra, the court explained that the court's contempt power is another area where the distinction between "civil" and "criminal" is often drawn. Contempt remedies that are coercive or compensatory are civil while those that are punitive are criminal. Ulmann, at 710.

It is clear that the plaintiff was in contempt of court for not paying child support, which is civil, however the capias issued for the plaintiff was to force his appearance in court to answer for non-payment, not a criminal charge. Therefore, the provisions under the Fourth Amendment did not apply to the issuance of a capias. Defendant Duncklee's argument that probable cause is satisfied under the Fourth Amendment should be rejected.

Duncklee sets forth an absurd notion (mem. pg 21) that "if the court were to hold that a capias is not functionally equivalent to a warrant, the Connecticut Superior Court would be stripped of its authority to enforce its own orders." This statement is absurd. The Court has empowered itself by issuing the capias in the first place. Enforcement of its orders would be by marshals properly serving capiases according to law and the rights of the person named in the capias.

15

Next counsel states (mem pg. 21) "Defendants could simply avoid arrest by remaining in their homes for an indefinite period." This may be true, however that is the protection afforded all persons in this country under the Fourth Amendment. Marshals would have to serve capiases in a legal way, protecting the rights of the person named, and develop a legal way of serving. Duncklee's method of service violated the constitutional protections provided to the plaintiff. Forcing the door from being closed, using the words 'arrest warrant', and entering the plaintiff's home without consent, are the protections that this plaintiff is afforded under the Fourth Amendment. In Payton v. New York, 445 US 586, the court stated, "the Fourth Amendment has drawn a firm line at the entrance to the house. The threshold may not be reasonable crossed without a warrant." Duncklee did not obtain a warrant. In Welsh v. Wisconsin, 466 US 740, 749-50(1984), the court held, "probable cause alone cannot justify an officer's warrantless entry into a person's home." The court further stated, "it is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor." Plaintiff's non-appearance 7 years earlier was a civil offense of minor proportion.

**Reply to II,B,3   It Was Reasonable For Duncklee To Conclude That He Could Enter Plaintiff's Residence Pursuant To A Capias Issued By The Superior Court.**

Duncklee should not be granted qualified immunity, because his entry to the plaintiff's home was not objectively unreasonable under the law. Counsel wants this court to believe that the intermingling of the words capias, capias warrant, and arrest warrant, changes the

_16

meaning of a capias and its legal intent, and changes the provisions
and protections of the Fourth Amendment.

Duncklee testified that he had training in service of a
capias.(Duncklee depo. at 11). Duncklee testified he had served
"hundreds" of capiases.(Duncklee depo. at 26). Duncklee testified that
he understands the difference between civil and criminal arrests.
(Duncklee depo. at 59). Counsel states( mem. pg 22)"Therefore, if this
Court changes course, or clarifies for the first time in Connecticut
that a capias is not a warrant, such holding would not necessarily
mean that the law was clearly established on September 30, 2002."

The capias not being a warrant has been clearly established long
before September 30, 2002. Not only does the Fourth Amendment
(ratified in 1791)clarify the difference, CGS 54-2a(a)(3) was clear, a
capias can issue for non-appearance, a civil remedy, 46b-231(1),(7),
was clearly established, a capias can issue for non-appearance
concerning payment of child support. The law in Fourette v. Griffin,
92 Conn. 388(1918), and Fitch v. Loveland, 1 Kirby 380 (Conn. 1788),
have the same premise, clearly established that outer doors may not be
broken to serve civil process or effect a civil arrest. Duncklee
argues (mem. pg. 22)that outer doors were not broken in the present
action, however, making entry can be construed as 'breaking in',
Duncklee forcing the door open with his foot. This Court will not be
"changing course", rather enforcing that which is already established
law, that a capias is not an arrest warrant for the purposes of the
Fourth Amendment. Commonwealth v. DeRosia, 402 Mass.284(1988), capias
did not give police authority to make a nonconsensual entry into
dwelling to effect an arrest, a search warrant or arrest warrant

17

should have been obtained. The arrest was warrantless. <u>Wisconsin v.</u> <u>Kryzaniak</u>, 2001 WI App. 44, held that police could not enter a home with a civil capias, absent consent or a warrant. Police should of obtained arrest warrant and search warrant.

It is impossible and unreasonable to believe that Duncklee, with over 22 years experience as a sheriff and marshal in Connecticut, serving hundreds of capiases, that his method of service of a capias has been identical to that which was performed on the plaintiff on September 30, 2002. Equally, it is unreasonable to believe that Duncklee's training by "Certified Instructors" (Duncklee depo. at 9)taught him to forcibly enter a private home, or force doors open, use the words 'arrest warrant' serving a capias, or that a capias authorized entry without consent, or that the Fourth Amendment protections, do not apply to State marshals serving capiases. Duncklee knew or should have known that his conduct violated constitutional law and State law. Therefore, Duncklee is not entitled to qualified immunity.

**Reply To II C. Summary Judgment Should Be Granted On Plaintiff's Equal Protection, Due Process & 42 USC 1983 Claims.**

The plaintiff argues that all of his related claims should prevail for the reasons stated herein. The plaintiff believes that Duncklee served him the capias in a manner unlike others served, therefore singling him out to inflict harm by serving him at 9:30 pm so that he would be unable to make bail, and leave him in jail until the next day. Duncklee relied on statements of Atty. Traystman, stating that "this was going to be a difficult one".(Duncklee depo. at 24). Duncklee then proceeded to violate the rights of the Plaintiff as

18

stated above. DBncklee did not obtain a search warrant or an arrest warrant as required to enter and search the plaintiff's home. As required in Cleburne v. Cleburne Living Ctr., Inc., 473 US 432 (1985), " the Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all persons similarly situated should be treated alike." Not obtaining the required warrants violated the equal protection clause of the Fourteenth Amendment. It would be unreasonable for his court to believe that Duncklee treats all subjects of his capiases as he treated the plaintiff. It would be unreasonable for this court to believe that Duncklee routinely violates rights in effectuating arrests under a capias. The plaintiff was selectively treated by Duncklee with the intent to punish the exercise of his constitutional rights, and in bad faith knowing that the plaintiff's rights were being violated.

Counsel states (mem.pg 24), there is no evidence that Duncklee intended to punish the exercise of plaintiff's constitutional rights. However, the evidence is clear by Duncklee's conduct on September 30, 2002, at the plaintiff's home. Duncklee prohibited the door from being closed, screamed at Ms. Cannon that he had an arrest warrant, enter the plaintiff's home without consent, and searched the plaintiff's home without a search warrant. Clear violations of the plaintiff's rights of due procees by not obtaining the proper warrants. As a veteran State Marshal, Duncklee knew or should have known that his conduct violated the rights of the plaintiff. If this court determines that Duncklee violated the plaintiff's constitutional rights, then he will be liable to the plaintiff under 42 USC 1983.

Duncklee is not entitled to summary judgment on the plaintiff's Equal
Protection Claim.

**Reply to II D, Plaintiff's State Law Tort Claims (Count Four) Are Also
Barred By The Doctrine Of Qualified Immunity.**

Counsel presumes that this court will grant summary judgment to
Duncklee on all of the plaintiff's claims, therefore summarily
dismissing the plaintiff's state law claims. The plaintiff is
confident that this court is not convinced that Duncklee acted
reasonably or will he prevail on summary judgment.
(USDC, tr.9/15/03, pg. 14, 23) Therefore, plaintiff's state law claims
will also prevail as a matter of law.

Although counsel states that false statements were made to
Cannon (Mem. pg 25), the plaintiff was injured by Duncklee's false
representations, Duncklee made a statement directly to the Plaintiff
that he had an arrest warrant for him. (Duncklee depo. at 47) Duncklee
knew he did not possess an arrest warrant. He testified he does not
serve criminal process. (Duncklee depo. at 14) Duncklee induced the
plaintiff to act on his false statements, by arresting the plaintiff.
The plaintiff was injured by spending one night in jail, and by having
his constitutional rights violated by Duncklee and the defendant
officers.

The plaintiff has proven and refutes Duncklee's belief that he
possessed or obtained an arrest warrant or search warrant. The
plaintiff has proven herein that a capias is not a valid arrest
warrant. Duncklee testified (Duncklee depo. at 47) that he
"intermingles" the words arrest warrant and capias. Duncklee testified
that he understands the difference between 'civil' and 'criminal'

_20

process. (Duncklee depo. at 59).The plaintiff maintains Duncklee
intermingles the words for convenience to confuse his subjects of the
capias and gain illegal entry to private homes, protected by the
Fourth Amendment. Summary judgment should be denied to Defendant
Duncklee on the false representation claim.

Trespass: It is well established that the plaintiff was the owner of
record of the house that Duncklee trespassed against on September 30,
2002.(see exhibit 'B' attached). Plaintiff refutes Duncklle's claim
that the plaintiff can only recover for damages to his *property* under
a claim of trespass. Connecticut Law of Torts sec. 18 states in part:
" At common law any invasion of real property entitled the possessor
to nominal damages, even though no actual damage had been done."
Trowbridge v. Royce, 1 Root 50 (1772).

Restatement of Torts sec. 163, applies this rule to cases of
intentional trespass. Duncklee knowingly trespassed on the plaintiff's
property knowing he did not possess an arrest warrant, and knowing the
constitutional protections of the plaintiff. Duncklee's motion for
summary judgment should be denied.

**CONCLUSION**

Based on the foregoing reasons and Duncklee's admission of his
alledged acts that violated the plaintiff's rights, Duncklee's Motion
for Summary Judgment and Qualified Immunity should be DENIED. The
plaintiff's Motion for Summary Judgment should be granted.

THE PLAINTIFF


STEVEN MILNER
PO BOX 25
STONINGTON, CT 06378
860-599-2930

CERTIFICATION

I hereby certify that a copy of the foregoing was mailed postage paid on February 21, 2006 to the following:

Robinson and Cole, LLP
Rhonda Tobin
280 Trumbull St.
Hartford, CT 06103

STEVEN MILNER

Scott Karsten
29 S. Main St.
W. Hartford, CT 06107