UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**FILED**
2006 FEB 23 P 2: 30
U.S. DISTRICT COURT
BRIDGEPORT, CONN

| | | |
|---|---|---|
| STEVEN MILNER | : | 3:02CV1929(SRU) |
| V. | : | |
| LESTER DUNCKLEE, ET AL | : | FEBRUARY 16, 2006 |

### AFFIDAVIT OF STEVEN MILNER

I, Steven Milner, being duly sworn, depose and say:

1. I am over the age of 18 and believe and understand the obligation of an oath.

2. I am the plaintiff in the above entitled action.

3. This affidavit is based on my own personal knowledge.

4. Atty. Gary Traystman represented my first wife in a divorce proceeding in the early 1990's.

5. Gary Traystman used unethical tactics to protract litigation in the divorce proceedings.

6. Gary Traystman was being paid by a multi-millionaire friend of my ex-wife's named Richard Chapman.

7. Gary Traystman lied to Judge Mihalakos concerning my earning capacity.

8. Gary Traystman lied to Judge Hendel concerning my income of real estate resulting in the judge illegally taking funds from me that was not entitled to be taken.

9. Gary Traystman moved the court before Judge Hendel to take funds from me without filing motions, without notification to my attorney, and without due process.

10. Gary Traystman threatened me that if I did not sign an agreement that suspended my visitation with my children, because I was unable to pay child support, that he would have me jailed.

11. Gary Traystman lied to the State Police, in 1994-95 concerning my visitation with my children on a day that was agreed to by the parties, effectuating an illegal arrest on me.

12. I had to file at least eight complaints with the Statewide Grievances Council against Gary Traystman for his unethical behavior.

13. My counsel, at the time, Barbara Quinn, agreed with me that the grievances were appropriate and that Mr. Traystman was unethical.

14. In 1994-95, I was no longer able to afford counsel, so I appeared before the court, pro se.

15. The situation with Gary Traystman, his unethical practice, and his lies to judges became so untenable for me in 1995, that I gave up and no longer appeared in court.

16. Judge Teller issued a capias for me in 1995.

17. The affidavit of Gary Traystman in the present action before the U.S. District Court presents statements by him that are untrue.

18. Traystman statement #6, untrue. I did not refuse to make support payments, I was unable to make payments because his litigation in the divorce matter put me out of business.

19. Traystman statement #10, untrue. No attempts were made to my knowledge to serve a capias on me prior to 2002.

20. Traystman statement #10 #11, untrue. I never moved out of Connecticut. I have lived continuously in Connecticut since 1993.

21. Traystman statement #10, untrue. I was not avoiding service of the capias, I was visiting with my children from 1995.

22. My son, Peter, worked for me from 1997 to 2000.

23. I made no attempt to pay the arrearage of child support, because I was told by my children that their mother was not interested in payment due to the fact she had inherited almost one million dollars.

24. I did not dispute the age of the capias, as I believe it is valid until executed or vacated by the court.

25. I did not dispute the appropriateness of service of the capias at the Superior Court hearing in 2002, because it was my intent to sue the defendants in Federal Court. I believed it was a Federal Court matter.

26. I was told by my children that the reason my ex-wife initiated the service of the capias in 2002, was because she was angry that I purchased property next to her residence.

27. Gary Traystman has lied under oath in his affidavit to this court that he has personal knowledge that I moved out of state, that I was avoiding service by not visiting with my children, or that I refused to pay child support.

28. Gary Traystman represented my present wife in a divorce proceeding in 2005-2006.

29. Gary Traystman lied to Judge Fischer in 2005, that I was attempting to change a separation agreement by filing a Motion for Alimony.

30. Gary Traystman lied to Judge Gordon in 2006, stating that Judge Swienton said at hearing, that I was not allowed to bring up the issue of the agreement at trial.

31. It is my belief that Gary Traystman is unethical, untruthful, and should be discredited.

THE PLAINTIFF

*/s/ Steven P. Milner*
STEVEN P. MILNER

Subscribed and Sworn to before me at Pawcatuck, CT this 21 day of February, 2006. Personally appeared, STEVEN MILNER, known to me or sufficiently proven.

Notary Public
Comm. Superior Court

ROBERTA KINNEY
NOTARY PUBLIC
MY COMMISSION EXPIRES APR. 30, 2007

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STEVEN MILNER and HEIDI CANNON,    :
                                   :
          Plaintiffs,              :
V.                                 :    CIVIL NO. 3:02CV01929(SRU)
                                   :
LESTER DUNCKLEE, ET AL.            :
                                   :
          Defendants.              :    JANUARY 25, 2005

## ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT, LESTER DUNCKLEE

The Defendant, Lester Duncklee ("Duncklee"), hereby files his Answer and Affirmative Defenses to the Plaintiff's Revised Complaint dated December 18, 2002.

A.   **PARTIES**

**Plaintiffs:**

As to the allegations in this section, the Defendant has insufficient knowledge or information upon which to form a belief, and, therefore, leaves plaintiffs to their proof.

**Defendant:**

This section is admitted insofar as it is directed at Duncklee.

B.   **JURISDICTION**

As to the allegations in this section, the Defendant has insufficient knowledge information upon which to form an opinion or belief, and, therefore, leaves plaintiffs to their proof.

C.   **NATURE OF CASE**

The allegations in this section are denied to the extent not previously dismissed by the Court.

HART1-1229365-1

EXHIBIT 'A'

**ANSWER:**

Duncklee has insufficient knowledge or information upon which to form a belief as to the truth or falsity of the allegations set forth in this paragraph and, therefore, neither admits nor denies the allegations, but leaves plaintiffs to their proof.

- With the door partially open, a man's foot was thrust in the opening and placed on the floor blocking the closing of the door.

**ANSWER:**

Duncklee has insufficient knowledge or information upon which to form a belief as to the truth or falsity of the allegations set forth in this paragraph and, therefore, neither admits nor denies the allegations, but leaves plaintiffs to their proof.

- Ms. Cannon attempted to close the door, at which time the man began to force the door open.

**ANSWER:**

Denied.

- Ms. Cannon held the door against his foot and repeatedly told the man that he could not come in.

**ANSWER:**

Admitted.

- Ms. Cannon was unaware who this man was.

**ANSWER:**

Duncklee has insufficient knowledge or information upon which to form a belief as to the truth or falsity of the allegations set forth in this paragraph and, therefore, neither admits nor denies the allegations, but leaves plaintiffs to their proof.

- The man began screaming at Ms. Cannon that he had an arrest warrant for Steven Milner.

**ANSWER:**

Defendant Duncklee admits the allegation insofar as he notified the woman that he had an arrest warrant for Steven Milner.

3

VOL. 489  PAGE 1096

## WARRANTY DEED-STATUTORY FORM

I, **Steven P. Milner, President of Sound Properties, Inc.**, a Rhode Island Corporatioon with mailing address of P.O. Box 1475, Westerly Rhode Island 02891, and registered to do business in the State of Connecticut as Sound Landings, Inc. here in designated as the Grantor, for Consideration of $~~[redacted]~~ received to the full satisfaction of the "Grantor" do grant to **Steven P. Milner and Heidi E. Cannon**, whose mailing address is 40 Trolley Crossing, Town of Stonington, State of Connecticut, herein designated the "Grantees", do hereby give, grant, bargain, sell and convey to the "Grantees" as Joint Tennants, with rights of suvivorship, any and all rights, title and interest in and to a certain tract or parcel of land together with the buildings and improvements located thereon, with **WARRANTY COVENANTS**, as more fully described in schedule A.

Signed this 24th day of May 2002

Witnessed by:

_/s/ R.D. Dixon_
_/s/ Lillian A. Miller_
Lillian A. Miller

_/s/ Steven P. Milner_
Steven P. Milner, President
Sound Properties, Inc.

STATE OF CONNECTICUT  }
COUNTY OF NEW LONDON  }   S.S.   NEW LONDON

Personally appeared Steven P. Milner, duly authorized President of Sound Preperties, Inc., Signer and Sealer of the foregoing instrument, and acknowledged the same to be his free act and deed, before me.

_/s/ Richard D. Dixon_
Richard D. Dixon, Esquire
Commissioner of the Superior Court

Grantee's last mailing address:
Steven P. Milner and Heidi E. Cannon
40 Trolley Crossing
Stoniongton, CT

NO CONVEYANCE TAX COLLECTED
CYNTHIA LADWIG
TOWN CLERK OF STONINGTON CT.

EXHIBIT 'B'

VOL. 489 PAGE 1097

"SCHEDULE A"

Boundary Description
LOT 9
Trolley Crossing   aka   Caravello Property
Greenhaven Road, Stonington, CT.
Per Subdivision Map
Date: Aug. 31, 1988   Revised: Sept. 14, 1988

Beginning at a point in the northerly line of Greenhaven Road, said point being the southwesterly corner of LOT 10 on said map and the southeasterly corner of the herein described premises;

thence running north 42°40'00" west along Greenhaven Road a distance of 22.36 feet to a point;

thence running north 73°19'00" east along OPEN SPACE PARCEL TWO and PARCEL A on said map a distance of 274.81 feet to a point;

thence running north 79°00'00" east along PARCEL A on said map a distance of 200.00 feet to a point;

thence running south 87°40'00" east along PARCEL A and OPEN SPACE PARCEL ONE on said map a distance of 138.85 feet to a point;

thence running south 74°50'00" east along OPEN SPACE PARCEL ONE on said map a distance of 516.37 feet to a point;

thence running south 15°12'00" west along LOT 8 on said map a distance of 248.99 feet to a point marked by an iron pipe;

thence running south 21°33'55" west along land now or formerly of Walter T. and Madeline C. Banker a distance of 194.16 feet to a point marked by an iron pipe;

thence running north 62°50'15" west along land now or formerly of Hazel Mildred Furey a distance of 94.34 feet to a point marked by an iron pipe;

thence running north 54°10'30" west along land now or formerly of Morris A. and Clare L. Smith a distance of 117.60 feet to a point;

thence running along LOT 10 on said map the following five courses and distances: (1) north 15°10'00" east a distance of 360.74 feet to a point, (2) north 74°50'00" west a distance of 290.00 feet to a point, (3) north 87°40'00" west a distance of 134.24 feet to a point, (4) south 79°00'00" west a distance of 196.65 feet to a point, and (5) south 73°19'00" west a distance of 264.02 feet to a point, said point being the point and place of beginning.

Containing 109,561 square feet, be it the same more or less.

RECEIVED FOR RECORD
STONINGTON, CT.

02 MAY 31 PM 3:25

CYNTHIA LADWIG
TOWN CLERK