UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STEVEN MILNER,                :  NO. 3:02CV01929(SRU)
    Plaintiff,

vs.

LESTER DUNCKLEE, ET AL.,   : MARCH 22, 2006
    Defendants.

### POLICE DEFENDANTS' COMBINED
### CROSS-MOTION FOR SUMMARY JUDGMENT AND
### OBJECTION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), defendants Bryan Schneider and Michael Peckham hereby move for the entry of summary judgment in their favor as to all claims by plaintiff Milner remaining in this case. These defendants represent that there are no material facts in dispute, and that they are entitled to judgment as a matter of law. Even if this Court determines that the entry into plaintiff's home pursuant to a capias was unlawful, which defendants believe is not supported by the evidence adduced in discovery, these defendants are entitled to qualified immunity for their conduct on the date in question.

## ORAL ARGUMENT REQUESTED

First, so far as this case is concerned, there appears to be no meaningful distinction between a capias and an arrest warrant.  While the general capias procedures of the State of Connecticut may be constitutionally in issue, the validity of this capias has never been and is not here challenged by plaintiff.  Rather, he challenges the authority conveyed by a presumptively valid capias to enter his residence to effect the arrest.  That challenge is unsupported in the jurisprudence.  Moreover, there has been and simply can be no demonstration that the law purportedly creating a distinction between a "warrant of capias" and an "arrest warrant", as to implicit authority to enter the residence of the subject for the arrest, was "clearly established" on September 30, 2002.  Both on the substantive law and on this prong of the qualified immunity analysis, the defendants are entitled to judgment in their favor.

Second, the undisputed fact is that Heidi Cannon ceased resisting the efforts of Marshal Duncklee to gain access to the residence after she was shown the capias, which explicitly and without limitation on its face authorized the arrest of Milner.  While Milner apparently suggests – notably without evidence to

support the claim – that Cannon somehow lacked the capacity to consent to this entry because she was supposedly frightened and in shock, there is absolutely no evidence of any force, undue duress or coercive measures employed by Duncklee, other than mere verbal persuasion and the display of the capias itself.  To a certainty, the defendant police officers themselves employed no improper measures, nor did they even utter any words as part of the persuasive efforts by the marshal.  There being no question but that Cannon was a co-owner and adult resident of the premises, who had full legal capacity to consent to the entry by the defendants, plaintiff is unable to demonstrate anything other than her consent to that entry – without force, unreasonable compulsion or other unlawful means by any defendant.  As a result, plaintiff's claims fail.

Finally, even if the first two grounds advanced by defendants are unavailing, it is explicitly conceded by Ms. Cannon – and cannot be contested by plaintiff, who has no personal knowledge – that the defendants could reasonably have perceived that Ms. Cannon had stopped contesting Duncklee's efforts to gain entry and was allowing them into the residence.

This being so, the objective reasonableness of the defendants' conduct in entering appears unarguable, and they are entitled to qualified immunity on this prong of the analysis as well.

For all the foregoing reasons, the motion by plaintiff Milner for summary judgment in his favor is objected to. The defendants, not plaintiff, are entitled to judgment as a matter of law based on the undisputed material facts of this case.

Pursuant to Federal and Local Rule, these defendants have submitted herewith a combined memorandum of law both in support of their motion and in opposition to plaintiff's motion, Rules 56(a)1 and 56(a)2 Statements, and excerpts of deposition transcripts relied upon by them, where not already provided to the Court by other parties.

WHEREFORE, and for the reasons set forth in the accompanying materials,[1] defendants Schneider and Peckham request their motion be granted and plaintiff's motion be denied, and that judgment enter in favor of these defendants.

---

[1]  These defendants also hereby incorporate by reference and adopt the arguments, points and authorities addressed by co-defendant Duncklee in his submissions in favor of his motion for summary judgment and in opposition to plaintiff's motion as to Duncklee.  Docket Nos. 127 and 136.

DEFENDANTS, BRYAN SCHNEIDER
AND MICHAEL PECKHAM

BY_____
Scott M. Karsten
Federal Bar No.: ct05277
Karsten & Dorman, LLC
29 South Main Street
West Hartford, CT 06107

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been mailed, postage prepaid, this 23rd day of March, 2006, to the following counsel of record or pro se parties:

Mr. Steven Milner, *pro se*
40 Trolley Crossing
P.O. Box 25
Stonington, CT  06378

Rhonda Tobin, Esquire
Robinson & Cole, LLP
One Commercial Plaza
Hartford, CT 06103-3597


_____
Scott M. Karsten

- 5 -

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STEVEN MILNER,                     :  NO. 3:02CV01929(SRU)
    Plaintiff,

vs.

LESTER DUNCKLEE, ET AL.,          :  MARCH 22, 2006
    Defendants.

### COMBINED MEMORANDUM IN SUPPORT OF POLICE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

This memorandum is submitted by defendant Stonington Police Officers Bryan Schneider and Michael Peckham, in support of their motion for summary judgment and in opposition to plaintiff's motion for summary judgment. Because there occurred no constitutional violation in this instance, and also because they are entitled to the protection of qualified immunity, these defendants are entitled to judgment in their favors, while plaintiff is not so entitled. The same analysis also forecloses plaintiff's remaining state law claims in this case.

### STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is warranted if the evidence offered demonstrates that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law.  See, Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  When considering a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

While the movant has the initial burden of demonstrating the absence of a disputed issue of material fact, the non-moving party must present "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation."  Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).  Moreover, not every disputed factual issue is material in light of the substantive law that governs the case.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986).

- 2 -

## ARGUMENT

### I.  FOR PURPOSES OF CONSTITUTIONAL ANALYSIS UNDER THE CIRCUMSTANCES OF THIS CASE, THE ONLY REAL DISTINCTION BETWEEN A CAPIAS AND AN ARREST WARRANT IS OF NO CONSEQUENCE.

As set forth extensively in the moving papers of co-defendant Duncklee, the origins of the "warrant of capias" are no less historical than are those of the "arrest warrant". Similarly, the general equivalence of the two writs appears to have significant, if perhaps loosely-considered, acceptance in the jurisprudence of both the federal and state courts. Indeed, that the two were both called "warrants" in Connecticut statutes until 1984 appears to cement at least some level of equivalence in the general nature and function of both forms of orders of the Superior Court. See Duncklee Memorandum in Support of Summary Judgment ("Duncklee Mem."), at 13-19.

In their respective submissions on summary judgment, both Marshal Duncklee and plaintiff appear to be arguing black and white propositions: either the capias is in all respects the "functional equivalent" of an arrest warrant, in which case the marshal's actions here are unchallengeable; or the capias is of no force or effect whatever to authorize entry into plaintiff's residence to accomplish the command of the capias, in which case

this was purely a warrantless arrest in his home.  It may be

that the more precise analysis is somewhere in between.

The starting point should be the Fourth Amendment itself.

The focal language is:

> The right of the people to be secure in
> their persons, houses, papers and effects
> against unreasonable searches and seizures
> shall not be violated, and no Warrants shall
> issue, but upon probable cause, supported by
> Oath or affirmation, and particularly
> describing the place to be searched, and the
> persons or things to be seized.

The first command of the Amendment is that there shall be

no "unreasonable" searches and seizures.  It is accepted that,

"[t]he Fourth Amendment's central requirement is one of

reasonableness."  Illinois v. McArthur, 531 U.S. 326, 330

(2001).  The Fourth Amendment itself nowhere states that only an

"arrest warrant" may be utilized to take custody of a subject by

order of a court, inside his residence or elsewhere.  In this

case, then, the proper question seems to be whether, for some

identifiable reason, a seizure inside the residence of the named

subject of a capias is in some manner "unreasonable", when an

otherwise identical seizure would not be unreasonable if

accomplished pursuant to an arrest warrant.

- 4 -

The Fourth Amendment itself does not specifically either authorize or preclude an officer's entry into a home for the purpose of taking the resident into custody, pursuant to any warrant. Rather, the United States Supreme Court has recognized that an arrest warrant "authorizes a limited invasion of that person's privacy when it is necessary to arrest him in his home." Steagald v. United States, 451 U.S. 204, 214 n. 7 (1981). That authority is recognized to be "implicitly" present in the arrest warrant, at least when the residence in question is that of the subject to be arrested. United States v. Lovelock, 170 F.3d 339, 343 (2nd Cir. 1990) (quoting Payton v. New York, 445 U.S. 573, 603 (1980). Defendants have not located any comparable discussion by the Supreme Court of such authority as either implicit or lacking in a capias. But see, Duncklee Mem. at 14.

Thus, the authority to arrest the subject of a court order in his residence is not directly traceable to the text of the Fourth Amendment itself. The requirement expressly set forth in that text is that any seizures be "reasonable", as that term is understood. The next question in the analysis must therefore be, can there be identified a constitutionally meaningful

distinction between a warrant of capias and an arrest warrant, which renders unreasonable the same implicit arrest authority in both orders.

As Marshal Duncklee quite convincingly demonstrates, the process by which a capias comes to be issued under Connecticut law seems clearly to meet an additional explicit requirement of the Fourth Amendment: that a warrant – of whatever type – be issued only upon probable cause.  See, Katz v. United States, 389 U.S. 347, 357 (1967) (search conducted without a warrant issued upon probable cause is per se reasonable, subject to limited exceptions).  Duncklee Mem. at 20.

Beyond real dispute, the capias is issued by a judge of the Superior Court (or family court magistrate, perhaps), when that detached, neutral judicial officer has personally witnessed the failure to appear by the subject.  To this extent, the capias seemingly meets the probable cause requirement at least as completely, if not more so, than an arrest warrant premised on representations of police officers and prosecutors, which may themselves be based on second or third-hand information, from witnesses of relatively untested veracity.  Steagald, supra.

As the Supreme Court has expressed the standard:

> The Fourth Amendment requires the states to
> provide a fair and reliable determination of
> probable cause as a condition for any
> significant pretrial restraint of liberty.
> The probable cause determination must be
> made by a judicial officer either before or
> after arrest.

Baker v. McCollan, 443 U.S. 137, 142-43 (1979) (internal

quotations and citation omitted).  In this most crucial respect,

the capias plainly passes constitutional muster.

Where the capias in this case, and apparently others issued

under the normal Connecticut procedure, potentially fails to

meet the Fourth Amendment's textual requirements is in the

patent absence of an "oath or affirmation".  On its face, the

capias does not meet this standard for a "warrant" permitting a

search or seizure authorized under the Fourth Amendment.

Notwithstanding the general precept that the requirements

of the Fourth Amendment are to be considered "practical and not

abstract", United States v. Ventresca, 380 U.S. 102, 108 (1965),

it is difficult to reconcile this unavoidable inconsistency.

One possible explanation is the recognized inherent, common law

authority of courts to enforce their own orders.  See In Re

Presnick, 19 Conn. App. 340, 347 (1989).  Similarly to contempt

proceedings, a requirement of oath or affirmation by the judge

- 7 -

issuing the order on his/her own authority may historically have been considered simply superfluous.

Notably, however, this potential "defect" in a capias as a constitutionally-authorized basis upon which to "seize" members of the citizenry goes to the technical validity of the judicial order itself, and not to the manner or location of its execution.  Here, the validity of the issuance of the capias has never been challenged by plaintiff – indeed, it has been repeatedly conceded, however uninformedly, by him.

The constitutional validity of a capias as a basis for arrest – in the residence of the subject or elsewhere – appears never to have been challenged in the reported jurisprudence of this State.  It is not challenged in this case.  The only challenge here is to the location of the execution of a facially-valid judicial command to seize the body of the plaintiff.  That command is unrestricted on its face, as to place, time or any other aspects of that execution.

In this respect, whatever potential discomfiture there may be with the standard capias procedure, this case appears to be governed by the Supreme Court's decision in United States v. Leon, 468 U.S. 897 (1984).  As the Second Circuit characterized

that rule, "[p]olice activity conducted pursuant to a warrant rarely will require any deep inquiry into reasonableness because a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith." Simms v. Village of Albion, 115 F.3d 1098, 1106 (2d Cir. 1970). The "officer's reliance on the magistrate's probable cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable." Id., quoting Leon, 468 U.S. at 922. The reasonableness inquiry, however, "is limited to determining whether a reasonably well-trained officer would have known that the warrants were illegal despite the magistrate's authorization." Id.

Here, notwithstanding the 1984 deletion of the word "warrant" from the statute, the Marshal was "commanded" by the capias process, under all the authority of the State of Connecticut, to seize the plaintiff. The defendant police officers were equally so commanded, as "proper officers". The capias contained no limitation as to time or place of seizure, and there has been no statute or case law identified which imposed any such limitation on the judicial order.

Even if there exists some technical basis upon which to question the constitutionality of the capias, it was not up to the defendant police officers to challenge the validity of the court order held by Marshall Duncklee.  Abion, 115 F.3d at 1106. Nor, it is respectfully submitted, is it this Court's charge here to determine the validity of that order, because this plaintiff expressly makes no such challenge.  Rather, this Court's determination must be whether the police officers and marshal were entitled, under the circumstances of this case, to rely upon judicial process duly issued by the Connecticut Superior Court, in complete consistency with centuries of jurisprudence in this State, or whether they may be personally liable for obeying the command of that process, as they were duty bound to do.

## II.     THE POLICE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE NO CLEARLY-ESTABLISHED LAW PROHIBITED THE COMPLAINED-OF CONDUCT.

It is a seminal principle of the qualified immunity doctrine that government officials ought not be required, on pain of personal liability in damages, to predict the future course of the law.  Anderson v. Creighton, 483 U.S. 635, 640 (1987); Koch v. City of Brattleboro, 287 F.3d 162, 165-66 (2d

Cir. 2003).  For this reason, such officials are held liable over the interposition of qualified immunity only where the right allegedly violated was clearly established in the law, such that a reasonable official would know that his conduct violated that law.  Id.  As the Supreme Court has expressed it, "[q]ualified immunity protects all but the plainly incompetent and those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 343 (1986).

These defendants argued on their motion to dismiss, and reiterate here, that there is not a single reported case yet identified by any party, nor by the Court to the recollection of these defendants, in which it is fairly held that a capias does not authorize the entry of an officer into the residence of the subject of the order, without the use of force as here, in order to apprehend that individual.  To a certainty, no such reported decision appears to have emanated from the United States Supreme Court, the Second Circuit Court of Appeals, or even the Connecticut Supreme Court, as would be required in order to render the proposition "clearly established" for purposes of qualified immunity jurisprudence.  See Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998).

- 11 -

On the contrary, from these defendants to Marshal Duncklee to James Neil, Director of Operations for the State Marshal Commission, the consistent and undisputed testimony is that none of these officials has ever been apprised of such a significant distinction between an arrest warrant and a capias.  Duncklee Mem. at 22.  Even if this Court now identifies a deficiency of constitutional proportion in the Connecticut capias procedures, that manifest change in the applicable law is certainly one circumstance in which the defendants are protected by qualified immunity.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Accordingly, these defendants are entitled to the benefit of that doctrine under the circumstances of this case.

**III.    HEIDI CANNON CONSENTED TO THE ENTRY IN QUESTION, AND IT THEREFORE WAS LAWFUL; AT A MINIMUM, THESE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THEY REASONABLY BELIEVED MS. CANNON HAD CONSENTED TO THE ENTRY.**

In addition to the foregoing, the evidence in this case establishes that Heidi Cannon, who opened the door to her and the plaintiff's residence upon the knock by Marshal Duncklee, consented to the officers' entry once she was shown the court order for Milner's arrest.  As a result of that consent, even in the absence of any warrant whatsoever, the entry of the officers

was lawful and they are entitled to judgment in their favor. Plaintiff concedes that such consent would be fatal to his claims, as he must.  Plaintiff's Mem. at 15.

Even if the Court were to determine that a question exists as to whether Ms. Cannon freely and voluntarily consented to these defendants entering into the residence, the undisputed evidence demonstrates that, at a minimum, it was not unreasonable for the defendant police officers to believe that Ms. Cannon had consented to the entry, and to the very limited "search" engaged in by them.  They are therefore entitled to qualified immunity on this basis as well.

First, there is no question but that Ms. Cannon had every right and capacity to consent to the entry of the officers into the residence.  She was an adult co-owner of the property, it was her permanent residence, she was listed there in the telephone book, her children attended school from that location, and in all respects this was her primary residence as well as that of plaintiff Milner.  Police Defendants' Rule 56(a)1 Statement, ¶¶ 8-10.  Indeed, Milner has never claimed, and does not claim now, that Ms. Cannon lacked full legal authority to allow the officers into the residence.

- 13 -

Second, it is clear that the police officers themselves did not in any way coerce, or even attempt to persuade, Ms. Cannon to allow entry into or a limited search of the premises.  They said nothing whatever to her at the door.  Id., ¶¶ 15, 16.  Once inside, they merely accompanied Ms. Cannon and the marshal when, as he had requested, she showed him the location of the door to the garage.  Id., ¶ 23.  The officers were not upset, agitated, loud or overbearing, to Milner's observation.  Id., ¶ 25.  Neither of the police officers ever used the words, "arrest warrant", during this encounter.  Id., ¶ 26.

The factual question of whether a consent to a search was voluntary or was the product of duress or coercion, express or implied, is to be determined from the totality of all the circumstances.  Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973); United States v. Garcia, 339 F.3d 116, 119-20 (2d Cir. 2003).  Where there is no genuine dispute about this issue, because there is evidence only on one side, ordinary principles of summary judgment permit the court to decide the question.  F.R.C.P. 56(e).

Plaintiff apparently contends that Ms. Cannon was "frightened" or "panicked" by the presence of the defendants at

the door.  Plaintiff's Reply Mem. at 7.  He suggests, without
actually asserting, that she was incapable of rational thought
as a result, or that her initial resistance was otherwise
somehow improperly overcome, and presumably that she therefore
did not freely consent to the entry by the officers.  Id.; see
also, Plaintiff's Mem. at 8.  This contention is wholly
unsupported by any evidence, nor is it tenable under existing
law.

First, the absence of evidentiary support for this
contention from Ms. Cannon herself is glaring.  Plaintiff has
submitted absolutely nothing to establish any absence of consent
on her part, despite the fact that she was originally a co-
plaintiff in this case.  The bare arguments contained in
plaintiff's memoranda are wholly inadequate to support his
claims.  F.R.C.P. 56(e).

To the contrary, Ms. Cannon refutes plaintiff's position.
The actual evidence on this score is from the deposition
testimony of Ms. Cannon, taken in a proceeding at which
plaintiff was present and was free to inquire all he cared to of
her.  That testimony establishes beyond dispute that, after
momentarily preventing Duncklee from entering by verbal and

physical means, when Ms. Cannon was shown the capias she ceased her resistance, stepped back away from the door, and allowed the officers into the home.  Defendants' Rule 56(a)1 Statement, ¶¶ 11, 12, 17-19.  Milner, who had apparently absented himself at the first hint of what was going on, can offer no evidence based on personal knowledge regarding Ms. Cannon's state of mind at the time.  Id., ¶ 16.

Even were there evidence to establish some greater level of initial resistance to Duncklee's efforts by Ms. Cannon, the law of this Circuit does not lightly accept a claim of duress or coercion.  For example, even where agents had drawn their weapons, a valid consent to entry has been found, where nothing else said or done by the agents indicated any intention to use force.  United States v. Fernandez, 456 F.2d 638, 640 (2d Cir. 1972).  Nor has the threat of arrest, or to remain on the premises until a search warrant was obtained, been deemed to constitute coercion or duress sufficient to overcome a valid consent to entry.  United States v. Calvente, 722 F.2d 1019, 1023 (2d Cir. 1983).

Here, there were no guns drawn, no threats to arrest Ms. Cannon, no suggestions of physical compulsion or threats of any

violence whatsoever.  The worst that is said of Marshal Duncklee's demeanor is that he spoke not "in a very tender voice", but was "screaming", when he requested to see the garage after the officers had entered the residence.  Milner Dep. at 59.  Other than mere verbal persuasion, the only other thing Duncklee is alleged to have done is to show Ms. Cannon the capias, after which she acquiesced to the entry.  Significantly, our Court of Appeals has expressly acknowledged that it is not unlawful for an officer to attempt to persuade a resident to consent to a search.  United States v. Diaz, 577 F.2d 821, 823–24 (2d Cir. 1978).

In the absence of any evidence to the contrary, and given the convincing evidence of Ms. Cannon's actual, if not expressed, consent to the entry of the officers, defendants respectfully submit that there simply was no constitutional violation committed here.  The only federal claims remaining in this case relate to that entry; the consent by the co-homeowner therefore forecloses all those claims by plaintiff.

Even if the Court were to have questions regarding the voluntary nature of the consent given by Ms. Cannon in this instance, it is perhaps most significant that Ms. Cannon herself

acknowledged that the officers and marshal <u>could reasonably have</u>
<u>perceived</u> that she was no longer trying to prevent them from
coming into the house, once she stopped her verbal protest and
stepped back from the door.  Defendants' 56(a)1 Statement, ¶ 20.
From that point, the defendants had every objectively reasonable
basis on which to believe that Ms. Cannon had consented to their
presence in the house.  In fact, that is exactly what the
defendant police officers believed had occurred.  <u>Id.</u>, ¶ 22.
Once again, plaintiff has no personal knowledge upon which to
contest that assessment.

Of significance, at the time Ms. Cannon acknowledged the
officers' reasonable perception of her consenting to the search,
she was still a co-party plaintiff in this litigation.
Accordingly, her admission to this effect may be of particular
evidentiary weight.  Federal Rules of Evidence (801)(d)(2),
804(a)(3).  In any event, it is uncontradicted by any evidence
whatever from plaintiff.

Accordingly, even if all other contentions by defendants
are rejected by the Court, it is submitted that there can be
only one outcome as to plaintiff's remaining claims.  The
defendants could reasonably have believed, and did believe, that

Ms. Cannon had consented to their entry.  On the additional ground that their conduct was therefore objectively reasonable, they are entitled to qualified immunity from liability.

### IV.    PLAINTIFF'S CLAIMS OF MISREPRESENTATION AND TRESPASS ARE EQUALLY UNAVAILING.

As noted in Marshall Duncklee's moving papers at pp. 25-26, plaintiff's state law claims are equally unsupported in the evidence.  There was no misrepresentation of any sort made to plaintiff by any defendant, relating to the entry into the premises.  Defendants' 56(a) 1 Statement, ¶¶ 11, 16.  Nor did plaintiff in any way rely on any such representation.  Id.  Even assuming a statement was made that Duncklee had an "arrest warrant", neither plaintiff nor Ms. Cannon had an understanding at that time concerning the legal effect of either form of warrant, as to authorizing entry.  Id., ¶ 24.  Neither was therefore confused or misled by any such statement.

Finally, the consent to entry by Ms. Cannon – or the defendants' reasonable belief in that consent – further disposes of plaintiff's claim for trespass.  Manifestly, the consensual presence of defendants on the premises supports no such claim; and even a mere good-faith belief in such an invitee status, in the context of defendants' privilege to engage in the

- 19 -

performance of their public duties, defeats any possible claim

of malice or bad faith.  They are therefore entitled to

governmental immunity, as a matter of law, from plaintiff's

state law claims.  <u>Shore v. Stonington</u>, 187 Conn. 147, 152-53

(1982).

## <u>CONCLUSION</u>

For all the foregoing reasons, defendants Schneider and

Peckham request their motion for summary judgment be granted,

the plaintiff's motion be denied, and judgment entered in favor

of these movants.

                    DEFENDANTS, BRYAN SCHNEIDER
                    AND MICHAEL PECKHAM


                    BY_____
                       Scott M. Karsten
                       Federal Bar No.: ct05277
                       Karsten & Dorman, LLC
                       29 South Main Street
                       West Hartford, CT 06107

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, this 23rd day of March, 2006, to the following counsel of record or pro se parties:

Mr. Steven Milner, *pro se*
40 Trolley Crossing
P.O. Box 25
Stonington, CT  06378

Rhonda Tobin, Esquire
Robinson & Cole, LLP
One Commercial Plaza
Hartford, CT 06103-3597


_____
Scott M. Karsten

– 21 –