UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEVEN MILNER,<br>    Plaintiff, | : | NO. 3:02CV01929(SRU) |
| vs. | | |
| LESTER DUNCKLEE, ET AL.,<br>    Defendants. | : | MARCH 22, 2006 |

### **POLICE DEFENDANTS' LOCAL RULE 56(a)(1) STATEMENT**

Pursuant to Local District Rule 56(a)(1), defendants Bryan Schneider and Michael Peckham hereby submit this Statement of Material Facts Not in Dispute, in support of their motion for summary judgment submitted herewith.[1]

1.   On September 30, 2002, defendants Bryan Schneider and Michael Peckham were sworn officers of the Stonington Police Department.  Schneider Dep. (Exhibit A) at 5; Peckham Dep. (Exhibit B) at 4.

2.   On that date, Officers Schneider and Peckham were assigned by their supervisor to assist State Judicial Marshal Lester Duncklee ("Duncklee") in taking into custody one Steven

---

[1] Pursuant to Federal Rule of Civil Procedure 10(c), these defendants hereby join in and incorporate herein by reference the points, authorities, arguments and supporting statements and materials submitted by co-defendant Lester Duncklee.

Milner, who resided in the Borough of Stonington. Schneider Dep. at 14, 26; Peckham Dep. at 37, 30.

    3. The two officers were advised by their supervisor that Duncklee was requesting assistance in serving a capias because he was concerned that Milner might cause trouble and resist being taken into custody. Duncklee Dep. (Exhibit C) at 25-27; Schneider Dep. at 34-35.

    4. Neither Officer Schneider nor Officer Peckham had been trained, instructed or informed, at the Police Academy or elsewhere, that there was or is any functional difference between the authority to arrest conferred by an arrest warrant and that conferred by a warrant of capias, or "capias". Schneider Dep. at 16-18, 39; Peckham Dep. at 9, 12. 16-18, 48.

    5. After receiving their assignment, Officers Schneider and Peckham traveled to the residence address of the plaintiff, Steven Milner, to assist Duncklee. Schneider Dep. at 25.

    6. Upon arrival, they assumed positions near the residence; initially Officer Peckham went to the rear yard while Officer Schneider remained behind Duncklee at the front door to the residence. Schneider Dep. at 26-27; Peckham Dep. at 30-32.

7. Duncklee knocked on the front door, and the knock was answered by Heidi Cannon at the request of plaintiff. Schneider Dep. at 26-28; Cannon Dep. (Exhibit D) at 22-23.

8. Ms. Cannon had lived at the residence at 40 Trolley Crossing, where plaintiff Milner also lived, since the two (and Ms. Cannon's two children) had moved in together in November 2001. Before that time, she had lived with Milner at another location. Cannon Dep. at 16; Milner Dep. (Exhibit E) at 11.

9. On September 30, 2002 Ms. Cannon lived at 40 Trolley Crossing as her residence: it was listed as her permanent address; she was listed in the telephone book there; and her children attended the local schools from that address. Cannon Dep. at 12.

10. Further, the house was owned in both names and Cannon and Milner shared the expenses of the household. Plaintiff's Opposition Mem., Exhibit B; Milner Dep. at 28.

11. When Cannon opened the door in response to Duncklee's knock, the Marshal identified himself immediately and stated that he had an arrest warrant for plaintiff Milner. Cannon Dep. at 24, 28; Duncklee Dep. at 18, 35-36; Schneider Dep. at 28.

12. Cannon may have told the Marshal several times he could not come in and tried to close the door; however, Duncklee's foot was placed on the threshold and this prevented the door from closing. Cannon Dep. at 24, 27-28.

13. Officer Schneider heard only a calm exchange between the two, and did not see the marshal block the door from closing. Schneider Dep. at 28-30, 42.

14. Ms. Cannon could not really see the two Stonington Police Officers through the opened door at that point, but had seen them initially. Cannon Dep. at 25-26.

15. Neither Schneider nor Peckham spoke to Cannon during this interaction, nor did they take any measures to assist Duncklee in preventing the door from closing. Schneider Dep. at 28-30; Peckham Dep. at 30-33; Cannon Dep. at 31.

16. Plaintiff Milner, who was located in the basement at the time, heard only Duncklee's voice during this exchange. Milner Dep. at 56-57, 62.

17. Duncklee showed and then handed to Cannon the capias he was intending to serve; she then looked at the capias and handed it back to the Marshal. Cannon Dep. at 29-39.

18. The capias, by its express terms, was directed to "Any Proper Officer", and it commanded such officer under the Authority of the State of Connecticut that the body of Steven Milner be taken and brought before the court or to such other facility as required if the court was not then in session. The capias was, on its face, duly executed by a judge of the Connecticut Superior Court. On its face, the capias sets forth no limitations as to where or when it may be served. Exhibit F.

19. After reviewing the capias, Cannon let go of the door and stepped back as all three defendants entered the residence. Cannon Dep. at 30-31.

20. From Milner's vantage point, he heard no further argument or protest after he heard Ms. Cannon ask whether the paper was an arrest warrant; the next thing he heard was the defendants walking around in the foyer area. Milner Dep. at 57-58.

21. At the point at which Ms. Cannon stopped saying, "You can't come in" and stepped back from the door, the defendants could reasonably have perceived that Ms. Cannon was no longer trying to prevent them from entering the house, and was in fact allowing them in. Cannon Dep. 50-51, 69.

- 5 -

22. Based on their limited observations of the interaction between the Marshal and Ms. Cannon, defendants Peckham and Schneider believed that Ms. Cannon had consented to their entry after being shown the capias. Peckham Dep. at 51-52; Schneider Dep. at 30.

23. Shortly thereafter, Duncklee asked Cannon to show him the garage, which she did. Cannon Dep. at 32, 57-58.

24. Neither Ms. Cannon nor plaintiff Milner was misled by Duncklee's use of the words "arrest warrant" at the door, because neither of them then understood the legal effects of either an arrest warrant or a capias as to whether the court's order authorized entry to make the arrest. Cannon Dep. at 58-59; Milner Dep. at 61.

25. When plaintiff observed the police officers in the house, they were not upset, agitated, loud or overbearing. Milner Dep. at 66.

26. Neither defendant Peckham nor defendant Schneider at any time used the words, "arrest warrant", in order to gain entry into the plaintiff's house. Milner Dep. at 57, 75.

```
                              DEFENDANTS, BRYAN SCHNEIDER
                              AND MICHAEL PECKHAM


                         BY_____
                              Scott M. Karsten
                              Federal Bar No.: ct05277
                              Karsten & Dorman, LLC
                              29 South Main Street
                              West Hartford, CT 06107
```

### **CERTIFICATION**

This is to certify that a copy of the foregoing has been mailed, postage prepaid, this 23rd day of March, 2006, to the following counsel of record or pro se parties:

Mr. Steven Milner, *pro se*
40 Trolley Crossing
P.O. Box 25
Stonington, CT  06378

Rhonda Tobin, Esquire
Robinson & Cole, LLP
One Commercial Plaza
Hartford, CT 06103-3597


                              _____
                              Scott M. Karsten