UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STEVEN MILNER : 3:02CV1929(SRU)
    plaintiff

V. :

LESTER DUNCKLEE, ET AL : APRIL 5, 2006
    defendants

### PLAINTIFF'S REPLY AND OBJECTION TO DEFENDANTS SCHNEIDER AND PECKHAM'S MOTION FOR SUMMARY JUDGMENT

**INTRODUCTION**

**Reply to page 1-2**

    The herein police defendants request this court to grant them summary judgment based on their unfounded theory of qualified immunity in which these officers are not entitled. They purport to set forth that a capias has no legal distinction from that of a criminal arrest warrant. They also contend that under the provisions of the Constitutional Fourth Amendment, these defendant officers had the right to enter the plaintiff's home with a capias. Although, the plaintiff has not done an exhaustive search of Connecticut case law, perhaps no cases in Connecticut exist distinguishing a capias from an arrest warrant, however, numerous other cases within the United States make that distinction. Both at the State and Federal level, cases have distinguished a capias from an arrest warrant. In fact, the Connecticut Attorney General's opinion 2000-010, clearly states that Connecticut has preserved the distinction between criminal arrest warrants and capiases. The Connecticut capias form clearly states that the officer is to "take the person" and further states "order the person taken into custody". The person taken into custody is not arrested, charged with a crime, or incarcerated for an offense. He is

1

merely held over in 'custody' to answer to the court for non-appearance, or to be coerced to testify. Moreover, Connecticut made the distinction in the Senate Bill proposed in 1984, excerpts submitted to this court by defendant Duncklee in his <u>Memorandum Of Law In Support Of Summary Judgment</u> dated February 6, 2006 at tab 3, that presumably changed the language in the criminal statute 52a(a)(3). At the time Senator Owens proposed that a capias be issued **rather** than a criminal arrest warrant for the purpose of a violation of court appearance or forfeiture of bond. Neither being a criminal offense. Senator Owens made the distinction between a capias and arrest warrant and was admitted by the Senate and accepted. House Bill 5075, at 1395, in 1984.

    The defendant's unsupported theory that a capias is not supported in jurisprudence is misguided. The capias by definition in Black's law dictionary is "that you take", no mention of arrest. Black's further states that a capias is a 'Writ' commanding the officer to take the body. Entry into one's home is not permitted with a writ. A writ is a written order of the court to command a proper officer to perform the action in the writ. Writs of Assistance permitted officers to enter the home in colonial times, however after the acceptance of the Fourth Amendment and Independence from England, writs of assistance were abolished. Therefore, the law of the Fourth Amendment and the jurisprudence before and after its inception were clearly established on September 30, 2002, disallowing the defendant's claim for qualified immunity.

    These police defendant's clearly understood and knew that no arrest warrant was issued, and that only sworn officers of their

department could serve arrest warrants, stating that they read and clearly understood their manual section 7010 and section 7015.1.1 pertaining to arrest warrants.

(Schneider depo at 8,9,16, 23)(Peckham depo at 22, 23, 24, 25, 26)

For the above reason that these defendants knew that an arrest warrant was not obtained, that marshals do not serve arrest warrants, and that the Fourth Amendment protects persons from entry into a private home without a warrant, that the Connecticut capias form does not use the word 'warrant', and that they took an oath to become police officers under C.G.S. 1-25 to uphold the Constitution, they are not entitled to summary judgment or qualified immunity.

**Reply to page 2, at Second**

Defendant's incorrectly have characterized the actions of Heidi Cannon in the present case. Of note, Heidi Cannon and the Plaintiff have been embroiled in a divorce action since the actions of these defendant's. Cannon signed an Amended Complaint that states actions differently from her deposition testimony in August 2005. In an effort by Ms. Cannon to upset the course of this case, put the Plaintiff in a bad light with this court, and relieve herself of any liability in this case, she has colluded with defense counsel to alter her testimony in return for her withdrawal as a plaintiff in the present action. Ms. Cannon has knowingly lied under oath and the plaintiff has supported that allegation with affidavits of Atty. Richard Dixon and Anne-Marie Foster, known to Ms. Cannon, attached hereto.

The defendant's put forth a contrived theory that Ms. Cannon gave 'consent' to entry into the plaintiff's home. However, Cannon signed the Amended Complaint which states to the contrary, that while she has

holding the door closed with her foot, against Duncklee's foot on the threshold, she repeated told him he could not come, even after she saw the capias paper, and she realized who he was. Cannon stated that Duncklee pushed the door open, however her testimony at deposition is that she stepped back from the door. Regardless, Cannon never said or has admitted to telling Duncklee or the defendant police officers that they could enter the residence. An open door does not permit officers to enter without a warrant.

Cannon's testimony is conflicting at best, Cannon states that she stepped back 'mentally' (depo at 27), she further states that Duncklee was pushing the door against her resistance with her foot. (depo at 50) Cannon states she tried to close the door but was blocked by Duncklee's foot.(depo at 49). She was still continually telling him that he could not come in. (depo at 49). Cannon depo at 50, Atty. Karsten asked her if the officers could reasonably perceive that she was no longer preventing them from entering. Cannon said 'yes'. This testimony was 'staged' in an effort to injure Milner, due to the pending divorce, and contrived to relieve Cannon from any possible liability, and facilitate her withdrawal from the case. Ms. Cannon further convolutes her testimony in that she claims she let the officers in the house because Duncklee was "yelling" to show him the garage.(cannon depo at 56,57)However, Cannon states in the Amended Complaint, that Duncklee didn't ask to see the garage until *after* he forced his way into the house. (Amended Complaint, Claim I)

The facts of Cannon's testimony at deposition are disputed by the plaintiff.

4

Defendant's further state, at page 3, that "no evidence of any force, undue duress, or coercive measures" were employed by Duncklee to enter the house. Plaintiff vehemently disagrees. Cannon admits to Duncklee yelling throughout the entire ordeal. Duncklee admits to preventing the door from being closed with his foot. Cannon admits that she tried to prevent entry with her foot, Cannon admits that Duncklee was "pushing" the door and Duncklee admits he used the words, 'arrest warrant' to gain entry, which all defendants have conceded was not obtained in this case, Duncklee admits to opening the door and entering. How much more coercion is needed. Defendants further state that "police officers themselves employed no improper measures". On the contrary, these officers entered a federally protected home without an arrest warrant or search warrant, they searched the home, they seized the plaintiff without proper authority, they were negligent in stopping Duncklee from violating the rights of the plaintiff, and negligent in stopping Duncklee from violating the law of trespass and false representation. These defendant officers are not entitled to summary judgment or qualified immunity.

**Reply at 3, Finally**

The defendants state that even if Cannon stepped back from the door, it was reasonable for them to enter. Both police officers were near the door when Cannon resisted enter, (Cannon depo at 27) saw and heard Duncklee yelling at Cannon to let him in, both saw Duncklee's foot preventing the door from closing. At no time did Cannon say that the officers could come in.

The defendants put forth a 'reasonably perceived' theory that Cannon's conflicting testimony of stepping back from the door allowed

5

entry is completely disallowed by the caselaw and Fourth Amendment jurisprudence. Even if Cannon stepped back, opened the door wide, and said nothing, or said 'you can't come in' would not allow entry by any officer without a warrant. Defendants further state that "Ms. Cannon stopped contesting Duncklee's efforts to gain entry and was allowing them into the residence". Here the defendants admit that Duncklee was trying to force his way into the house, and that because Cannon stopped 'contesting', after repeatedly telling them not to come in, with her foot against the door, that further not contesting was an admission to entry. Completely disallowed by the Fourth Amendment protection of not first obtaining a warrant. What was Cannon suppose to do? Was she suppose to hold off a two hundred fifty pound man with his foot forcing the door open, yelling at her, bent on entering under any circumstances, for an indefinite period of time? As citizens of the United States we are protected by laws and should be protected by competent officers to abide by those laws. These defendant officers did not abide by the law or protect the citizens as required.

These defendant officers knew or should have known that their actions violated the plaintiff's rights and therefore are not entitled to summary judgment or qualified immunity.

**CONCLUSION**

For the reasons stated in the foregoing, the attached Memorandum of Law and supporting documents, defendants Schneider and Peckham's Motion for Summary Judgment should be Denied and the Plaintiff's Motion for Summary Judgment should be Granted.

THE PLAINTIFF

*[signature]*

STEVEN MILNER
PO BOX 25
STONINGTON, CT 06378
860-599-2930

CERTIFICATION

    I hereby certify that a copy of the foregoing was mailed postage paid on April 10, 2006 to the following;

Robinson and Cole, LLP
Rhonda Tobin
280 Trumbull St.
Hartford, CT 06103

*[signature]*
STEVEN MILNER

Scott Karsten
29 S. Main St.
W. Hartford, CT 06107