UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT  FILED

| | |
|---|---|
| STEVEN MILNER<br>    plaintiff | : 3:02CV1929(SRU)<br>2006 APR 13 P 12:37 |
| V. | :    S. DISTRICT COURT<br>     IDGEPORT, CONN |
| LESTER DUNCKLEE, ET AL<br>    defendants | : APRIL 5, 2006 |

**MEMORANDUM OF LAW AND REPLY
IN SUPPORT OF OBJECTION
TO DEFENDANTS SCHNEIDER AND PECKHAM'S
MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The plaintiff hereby submits his memorandum of law in objection to police officers Schneider and Peckham's motion for summary judgment based on their defense of qualified immunity. Due to the constitutional violations of the plaintiff caused by these defendant's of illegal entry of his home, illegal search and seize, trespass, misrepresentation, and negligence, these defendant officers are not entitled to summary judgment or qualified immunity.

The pivotal questions of the present action is whether a capias has the legal effect of a criminal arrest warrant, whether officers may enter a private home with a capias, absent consent, or exigent circumstances, whether a person can be seized within his home by officers under a capias, absent consent or exigent circumstances, whether a search warrant needs to be obtained to search a premises under a capias, and whether these officers committed trespass and misrepresentation by claiming they were in possession of an arrest warrant. Ancillary to this action is whether these defendant police officers were negligent in not stopping defendant state marshal

1

Duncklee from entering the plaintiff's home knowing that the proper warrants had not been obtained.

**ARGUMENT**

The plaintiff rejects the defendants argument that a capias is a "functional equivalent" of an arrest warrant. And further rejects, as this court should, their argument of the analogy in this case to the Fourth Amendment unreasonable search and seizure clause. The Fourth Amendment clearly states and was clearly established on September 30, 2002 that no warrants shall issue but upon probable cause, supported by oath and affirmation. It is clearly unreasonable for these defendants to enter a federally protected home without first obtaining the necessary warrants, based on probable cause, supported by oath, as stated in the plaintiff's Motion for Summary Judgment, the following cases support this theory. California v. Hodari, 499 US 621(1991), United States v. Watson, 423 US 411 (1976), Pembauer v. Cincinnati, 475 US 469, 488 (1986)stating "no justification for forcibly entry to serve a capias", Welsh v. Wisconsin, 46 US 740(1984), stating no justification for a warrantless entry into home for civil offense, United States v. United States District Court, 407 US 297, 313(1972), State of Wisconsin v. Kryzaniak, 2001 WI App. 44, 241 Wis. 2d 358, stating the capias does not rise to the level of an arrest warrant. The reasonable test of the actions of these defendants is specifically barred by the Fourth Amendment. These officers acted unreasonably by entering the plaintiff's home without a warrant.

Whether the capias was called a warrant in language in the statute does not make it an arrest warrant as perceived by the Fourth Amendment. It has long been established in Connecticut that a capias

2

has been distinguished from an arrest warrant. This distinction derives from common law rule applied in several older Connecticut cases. see <u>Fourette v. Griffin</u>, 92 Conn 388, 391(1918), <u>Shaw v. Shaw and Six Others</u>, 1 Root 134 (Conn.1789), <u>Fitch v. Loveland</u>, 1 Kirby 380, 386-87 (Conn. 1788). These common law cases have established that arrests on civil process is different than arrests from criminal process, and Connecticut has preserved that distinction. From common law a capias was and is, a civil remedy by writ from the court to bring a person to court to testify. <u>International Union,UMWA v. Bagwell</u>, 512 US 821, 828-829, 114 S.Ct. 2552, 2557 (1994). Connecticut has preserved the common law distinction between a capias and arrest warrant. <u>Ullmann v. State</u>, 230 Conn. 698, 710(1994), stating that Contempt remedies that are coercive or compensatory are civil while those that are punitive are criminal.

The capias is coercive in nature, to coerce the appearance of the person in court would be a civil arrest, while an arrest warrant, starting the process by which a person might be punished, would be a criminal arrest. <u>Ullmann</u>, supra at 698.

The court in <u>Miller v. U.S.</u>, 357 US 301, 306-07, 78 S. Ct. 190(1958), recognized a constitutional dimension to the distinction between a capias and arrest warrant. Also noting the existence of the common law rule.

Connecticut General Statutes all differentiate between a capias and an arrest warrant, see CGS 54-2a(1), 54-2a(3), 46b-231(m)(1), 46b-231(m)(7). The language of the statutes has been tested in the following cases, <u>Genesky v. Town of East Lyme</u>, SC 17152 (2005), "The process of statutory interpretation involves a reasoned search for the

3

intention of the legislature." Indeed, in Duncklee's own admission to this court (Duncklee mem.pg. 19, tab 2) quoting Senator Owens stating a proposed change to House Bill 5075(1984) that issuing a capias "rather" than a criminal arrest warrant, is a clear distinction in the language of the statute. In Genesky, supra, quoting Wasko v. Manella, 269 Conn. 527, 534-35 (2004), the Supreme Court stated, " we seek to determine, in a reasonable manner, the meaning of the statutory language as applied to the facts of the case."

The facts in the present case, a civil non-appearance, simply do not rise to a criminal arrest warrant within the "reasonable" meaning of the statute or for the purposes of the Fourth Amendment.

In Genesky, supra, at footnote 11, the court stated that the term 'Police officer' is clearly different than a 'constable'. Likewise, the statutory interpretation, of the words 'capias' and 'arrest warrant' are clearly different. The legislature never intended that the two distinct forms of capias and arrest warrant were to be one in the same.

The defendants misconstrue the meaning of the Fourth Amendment 'probable cause' as defined. The probable cause element is in the context of a crime being committed, in the context of a warrant being issued under oath and affirmation. Their argument should be rejected that a judge witnesses "probable cause" that the subject of a capias is not present in court when summoned to be there. This is not the probable cause defined by the Amendment. The Amendment must be read and applied in its entirety. The Amendment cannot be dissected, as the defendants want this court to do, by applying only the unreasonable aspect or the probable cause aspect. As the Amendment states no

4

warrants shall issue, but upon probable cause, supported by oath or affirmation. The capias does not comply with this Fourth Amendment provision, therefore it is not a warrant, and the plaintiff had the right to be secure in his home against unreasonable search and seizure, including protection from entry by these defendants. The search and seizure was unreasonable because no warrant of any kind was obtained. The issuance of a capias is discretionary, where a warrant is not. DiPalma v. Wiesen, 163 Conn. 293, 298(1972). in Welsh v. Wisconsin, 466 US 740, 749-50 (1984) held; "that probable cause alone cannot justify an officer's warrantless entry into a person's home."

Defendant's reference to caselaw in their memorandum should equally be rejected, as they pertain to arrest warrants based on probable cause that a crime has been committed. Their reference to Baker v. McCollan is equally unconvincing, as it only relates to one aspect of the Fourth Amendment, probable cause. The Amendment has three requirements for the issuance of a 'warrant'. The capias does not pass constitutional "muster".

The defendant further puts forth a theory that the capias is inconsistent with requirements of The Fourth Amendment.(Mem. at 7) However, they further state that the courts can enforce their own orders. Courts cannot enforce orders that are contrary or contradictory to the Constitution. Defendants contradiction is unavoidable. The plaintiff has never challenged the validity of the capias as he believes it was valid and issued properly. The issue is the illegal entry and seizure of the plaintiff, while these defendants had only a civil capias. The location of seizure is in question, because these defendants did not have the authority under any court

5

order to enter the plaintiff's house. Therefore, the seizure was equally unconstitutional. The capias, or the order behind it does not state, take the body under any condition, or does it state that violation of ones rights is permitted to serve a capias.

This court should reject the defendant's reference to <u>Simms v. Village of Albion</u>, claiming the reliance on a magistrate's probable cause and sufficiency of a 'warrant' as objectively reasonable, simply is not relative to the case at bar.

Defendant's further state (mem. at 10) that it was not up to the defendant police officers to challenge the validity of the court order held by Duncklee, however, it was certainly within the realm of reasonableness to question Duncklee as to what process he was serving. The officers should have know, by their training and familiar knowledge of their police manual, that Duncklee was without authority to serve an arrest warrant, therefore the officers should have protected the plaintiff from an illegal forced entry into his home in which they willingly participated.

Defendant's further state that the judicial process ordered by the capias was in complete consistency with "centuries of jurisprudence" in this State. Nothing could be further from the truth, as stated above in <u>Fourette v. Griffin</u>, <u>Shaw v. Shaw and Six Others</u>, <u>Fitch v. Loveland</u>, <u>Ullmann v. State</u>, entry is barred with civil process. In further jurisprudence stated above, <u>International UMWA v. Bagwell</u>, <u>Miller v. U.S.</u>, <u>Pembauer v. Cincinnati</u>, <u>Welsh v. Wisconsin</u>, <u>Wisconsin v. Kryzaniak</u>, all recognize that a capias is not an arrest warrant within the meaning of the Fourth Amendment. In <u>Genesky</u>, supra, this court must adhere to the statutory language that if the

6

legislature intended that a capias was equivalent to an arrest warrant, they would have eliminated the word 'capias' from the statute, because there would be no need for two words meaning the same. Indeed, the legislature intended that a capias is different from an arrest warrant, because it has a different legal affect since early jurisprudence in this State.

**REPLY TO SEC. II, PG 10**

These defendants should be barred from the defense of qualified immunity. These officers clearly stated that they were very familiar with the Town of Stonington Police Manual, including section 7015.1.1, in which only sworn members of the department could serve arrest warrants. (Schneider depo. 16, 21) (Peckham depo. 22, 23). These defendants have tried to transfer their burden onto Heidi Cannon, claiming now, there was consent to enter, the plaintiff argues differently and is addressed further in this memorandum below.

Any reasonable officer would know or should have known that entry into a federally protected home was unreasonable without a warrant. These officers set forth no viable theory that a capias is legally equivalent to an arrest warrant. These officers knew that Duncklee could not serve arrest warrants, by their manual sec. 7015.1.1, therefore, they knew that Duncklee was not in possession of an arrest warrant, they had to know that Duncklee was in possession of some type of civil process. These officers familiar with arrests, search and seizures, they absolutely had to know the provisions of the Fourth Amendment on September 30, 2002. Therefore, they had to know that entry into the plaintiff's home without a warrant, consent, or exigent circumstances, was violating the plaintiff's constitutional rights,

7

and their entry was not allowed by the protests of the occupant or over the force by Duncklee.

In paragraph 2, pg. 11 of the defendant police officers memorandum in support of summary judgment, incorrectly states that "not one single reported case....held that a capias does not authorize the entry of an officer into a residence of the subject of the order, without the use of force as here, in order to apprehend that individual."

This is an absurd statement by the defendants. First, the force exerted by Duncklee was unreasonable, forcing the door open with his foot, as he stated to communicate with the person inside. When he was told not to come in, he did not retreat. He pushed the door against Cannon's foot, in an effort to 'force' his way in. He then forced the door open, made entry, against Cannon's foot,(Cannon depo. 50) and against her repeated commands not to come in.(Cannon depo. 49) Duncklee repeatedly <u>yelled</u> "let me in" (Cannon depo. 24, 29) There can be no clearer showing of 'Force'.
Duncklee's actions were witnessed by these police officer defendants regardless of what they say now, after commencement of the present action. They were present, they witnessed the force, they condoned it, and they participated in the illegal entry, they knew the provisions of the Fourth Amendment, and therefore are not entitled to qualified immunity. This meets the 'tangible connection test' stated in <u>Bass v. Jackson</u>, 790 F2d, 260, 263 (2d Cir.1986)

The cases supported by the plaintiff clearly state that a capias is not an arrest warrant and that entry under a capias is not allowed, protected by the Fourth Amendment. See plaintiff's Motion for Summary

8

Judgment dated January 20, 2006. The following cases were clearly established on September 30, 2002, establishing that entry to a private home with a capias is not allowed even when the occupant opens the door. <u>United States v. Watson</u>, 423 US 411 (1976), <u>Pembauer v. Cincinnati</u>, 475, US 469 (1986), <u>United States v. United States District Court</u>, 407 US 297, (1972), <u>Payton v. New York</u>, 445 US 586, <u>United States v. McCraw</u>, CA 4 Va, 920 F2d 224 (1990), <u>Sumdum v. Alaska</u>, 1980 Alaska, 612 F2d 1018.

    Defendant's reference to <u>Harlow v. Fitzgerald</u>, 457 US 800 (1982), clearly supports the plaintiff's position that these defendants are **not** entitled to qualified immunity. The premise set forth in <u>Harlow</u> states, that "defendants shield themselves from liability so long as their conduct does not violate clearly established statutory and constitutional rights of which a reasonable person should have known." These defendant officers cannot come before this court in good faith, claiming that on September 30, 2002, that they were unaware of the constitutional rights of the plaintiff, that a capias is an arrest warrant, and that their actions were reasonable under the circumstances or the Fourth Amendment. They knew their police manual as stated herein, they took an oath under CGS 1-25 to protect the constitutional rights of the citizens, and being seasoned police officers, have served warrants on many occasions. (Peckham depo. 24) (Schneider depo.23) Therefore, there actions were unreasonable, they knew or should have known they acted unreasonably and were violating the plaintiff's rights, they are not entitled to qualified immunity.

9

**Reply to Section III, pg. 12**

Defendants, now, after nearly four years of litigation put forth a theory that Cannon consented to entry into the plaintiff's home. This 'theory' must be put into context by the sequence of events before this court can understand the defendant's unfounded position concerning 'consent'.

First, Heidi Cannon was a co-plaintiff in the present action, signing the amended complaint of her own free will in 2002. The Amended complaint clearly outlines events that, some of which, only Cannon would know. Cannon recited those events to Milner over a three day period in which both Milner and Cannon drafted a complaint to this court. Milner and Cannon were married in 2003. Milner filed a dissolution of marriage action in the Connecticut Superior Court in 2004 based on her emotional breakdowns and her physical attacks on Milner. Cannon was deposed in the present action in 2005, during the pending divorce litigation. Cannon was uncooperative in the divorce litigation, reneging on a separation agreement signed by Milner and Cannon, therefore forcing the divorce into a trial with great animosity between them. During the time period before Cannon's deposition in 2005, Milner tried to ascertain Cannon's position as to whether she would stay in the action as a co-plaintiff or withdraw. Cannon would not state her position to Milner through her anger over the pending divorce, and repeatedly hook up the phone on him.

Secondly, at the deposition of Cannon in 2005, defendant's counsel produced a paper signed by Cannon to be filed with this court withdrawing Cannon from the present action. At that point, counsel put Milner on notice and under the impression that Cannon was no longer a

10

co-plaintiff, Defendant's statement in their memorandum that Cannon was a co-plaintiff at the time of her deposition is technically correct, however her intent was to withdraw shortly thereafter. One can only deduce that her testimony was staged by defense counsel, slanted with the intent to harm Milner, and an effort to derail the present action.

Thirdly, Cannon's testimony at deposition is internally contradictory and contrived. Cannon states that she was at home with Milner on September 30,2002 (Cannon depo. 22)She states in the amended complaint that Milner was not at home. (A. complaint at 3) Her claim that she was drinking wine with Milner (Cannon depo. 22) Milner was and is unable to drink wine due to a stomach condition. She claims she didn't know if anything was said to Milner after the knock on the door by Duncklee.(Cannon depo. top pg. 23) However, she further testified(depo. mid 23) that maybe he did say something. Further on page 23 of her deposition Atty. Karsten seems to 'coach' with her answers. (depo.23, line 14). Cannon further contradicts her testimony that the door was barely open, (Cannon depo. 25) then changes her testimony to the door being open 18 inches. (Cannon depo. 26) Cannon further states (Cannon depo. at 27) that she stepped back from the door, and then changes her testimony after being coached by Karsten, that she stepped back 'mentally'. All her testimony thusfar is inconsistent to her signed amended complaint. Cannon states at 31, that she let go of the door and stepped back. She further states at 69, that Duncklee was pushing the door when she stepped back and let go out the door. One can only deduce that Duncklee overcame her resistance, and forced his way into the plaintiff's home. Cannon

11

further testified that Duncklee immediately identified himself as a marshal(Cannon depo. 28) Inconsistent with the amended complaint in which she stated that Duncklee was not identified until after he placed his foot in a manner blocking the door from closing, preventing Cannon from closing the door, he trying to force the door open, he screaming he had an arrest warrant, then he producing a badge to prove who he was. This series of events is totally inconsistent with her sworn testimony. Cannon further convolutes her testimony by stating that Duncklee repeatedly yelled at her, while he was outside the door, to "show him the garage."(Cannon depo 30) Cannon stated in her amended complaint, that Duncklee didn't yell at her to see that garage until after he had forced his way into the house. It makes no logical sense that Duncklee would ask to see the garage while outside the house. Now, after a pending divorce action Cannon claims that she was intimidated by Milner into signing papers in the present action. (See exhibit 'A', Cannon's notes on caselaw documents aiding in the present action.) However, she did recollect the events described in the amended complaint that she signed.(Cannon depo. 65)

**Defendant's Claim of Consent to Enter**

Cannon states that she let go of the door and stepped back (Cannon depo. 31) However, Cannon further states (Cannon depo. 50) that she was holding the door closed with her foot, and that Duncklee was "pushing" it open against her foot. Cannon further solidifies the fact that she stepped back and let go out the door due to Duncklee's pushing, not retreating, and force. (Cannon depo. 69) A clear indication that Duncklee was not about to retreat, that force was used to enter, and that if Cannon did step back from the door, it was that

12

Duncklee was going to forcibly enter under any circumstance. As stated in <u>McCraw</u>, supra and <u>Alaska</u>, supra, an open door is not an invitation to enter.

The resistance exerted by Cannon, verbally and physically, unequivocally proves that these defendant's did **not** have consent to enter the plaintiff's home.

Atty. Karsten further stages Cannon's testimony, to later make a claim of a theory of consent, ( Cannon depo. 50) that these officers could "reasonably perceive" she was no longer trying to prevent them from coming into the house. Plaintiff contends that Cannon could not possibly have knowledge as to what the mind set was of these defendant officers, either now, or on September 30,2002. How long was Cannon suppose to resistance entry by these officers? How long was Cannon suppose to take being 'yelled' at by Duncklee, before one of them retreated? Duncklee and the police officers knew or should have known that they did not possess an arrest warrant, and that entry into a federally protected private home was not permitted with a capias or any other civil process. Cannon was confused, panicked, and frightened, (see affidavits exhibit 'B' and 'C' attached) her stepping back from the door was a reaction to Duncklee's and these defendant officers advances, as Duncklee forced his way in, force being condoned by these defendant police officers as they participated in the illegal entry.

If there was reasonable consent, that any reasonable officer would understand, it would have come at the first instance Cannon opened the door. After Cannon's physical and verbal resistance, no reasonable officer could believe that consent was given to enter the

13

plaintiff's home. Therefore, these officers are not entitled to summary judgment or qualified immunity.

Contrary to defendant's claim that these police officers "merely accompanied" Ms. Cannon and the marshal, (mem. at 14), these officers participated in the illegally entry, participated in the illegal search of the home, and participated in the illegal seizure of the plaintiff inside his home, all in violation of the plaintiff's Fourth Amendment protection.

The plaintiff submits, that due to the divorce proceedings in which Cannon escalated into great animosity between Milner and her, that her deposition testimony in the present case was staged and fabricated in favor of the defense in return for withdrawal from the present action without costs or liability.

**Reply to IV of Defendant Officers Memorandum**

The plaintiff has stated and proven that these defendant police officers have violated his constitutional rights as stated in the amended complaint, therefore his state law claims should remain.

**CONCLUSION**

By the indisputable violations of the plaintiff's constitutional rights and state law claims, stated herein and in his Motion for Summary Judgment, the defendant police officers Schneider and Peckham are not entitled to Summary Judgment or Qualified Immunity in any aspect of the present action. Therefore, the defendant police officer's Motion for Summary Judgment should be Denied and the plaintiff's Motion for Summary Judgment should be Granted.

THE PLAINTIFF


STEVEN MILNER
PO BOX 25
STONINGTON, CT 06378
860-599-2930

CERTIFICATION

    I hereby certify that a copy of the foregoing was mailed postage paid on April 10, 2006 to the following:


Robinson and Cole, LLP
Rhonda Tobin
280 Trumbull St.
Hartford, CT 06103

STEVEN MILNER

Scott Karsten
29 S. Main St.
W. Hartford, CT 06107

15

*refered to in Dunklees reply brief stateing he had the right to do what he did.*

### LexisNexis™ by Credit Card

Home | LexisNexis by Credit Card | My Products | Bookstore | Products & Services | Sign Off

View: Full | Cite        Documents Purchased | New Search        Auto-Cite® | Shepard's®        View in Printable Form

Your browser settings may prevent your return to this document. Please print or download this document before selecting another.

**Document Links:**
Start of Document
PRIOR HISTORY:
DISPOSITION:
CASE SUMMARY
PROCEDURAL POSTURE:
OVERVIEW:
OUTCOME:
CORE TERMS:
LexisNexis (TM) HEADNOTES - Core Concepts -
DECISION:
SUMMARY:
LEXIS HEADNOTES - Classified to U.S. Digest Lawyers' Edition:
SYLLABUS:
COUNSEL:
JUDGES:
OPINIONBY:
OPINION:
CONCURBY:
CONCUR:
DISSENTBY:
DISSENT:
REFERENCES:

SHEPARD'S®       443 U.S. 137, *; 99 S. Ct. 2689, **;
                61 L. Ed. 2d 433, ***; 1979 U.S. LEXIS 141

BAKER v. McCOLLAN

No. 78-752

SUPREME COURT OF THE UNITED STATES

443 U.S. 137; 99 S. Ct. 2689; 61 L. Ed. 2d 433; 1979 U.S. LEXIS 141

April 23, 1979, Argued
June 26, 1979, Decided

**PRIOR HISTORY:**

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT.

**DISPOSITION:** 575 F.2d 509, reversed.

**CASE SUMMARY**

.../dispdoc.asp?_qString=b4kDb1F04U2W3%3FCkWDD23ETvTVvpvTvpvQDzp%2BTpvPP9/13/03

EXHIBIT 'A'

| | | |
|---|---|---|
| UNITED STATES DISTRICT COURT | : | DISTRICT OF CONNECTICUT |
| STEVEN MILNER<br>plaintiff | : | NO.3:02CV1929 (SRU) |
| V. | : | |
| LESTER DUNCKLEE, ET AL<br>defendants | : | MARCH 28, 2006 |

### AFFIDAVIT OF RICHARD D. DIXON

I, Richard D. Dixon, being over the age of 18, being duly sworn do depose and say the following to my belief and recollection:

1.   I have known Heidi Cannon since approximately 2000 when I handled her divorce as her attorney.

2.   I have known Steven Milner as his attorney in real estate and various other matters since approximately 1993.

3.   I have also known Mr. Milner and Ms. Cannon socially.

4.   On September 30, 2002, in the evening, I received a phone call at my home from Ms. Cannon.

5.   Ms. Cannon was extremely upset and indicated that her fiancé, Mr. Milner, with whom she lived at 40 Trolley Crossing, Stonington, CT had been taken from their home against his wishes by two policemen and a Marshall.

6.   She asked if she could come over to talk about the incident and how to get Mr. Milner released from custody that night.

7.   She immediately came over and was visibly upset and angry and told me that the police and Marshall had forced their way into their house.

8.   I asked her if they had physically pushed to door open and she said no, but they wouldn't let her close it.

EXHIBIT 'B'

and they should leave.

10. She told me they insisted that they come in to look.

11. According to her statement to me, she again told them Mr. Milner wasn't there, but they again insisted that she had to let them come in, whereupon they entered against her will.

12. She remained very agitated and upset and asked me to try and get Mr. Milner released that evening.

13. I called a bail bondsman who ascertained that Mr. Milner had been taken to "Corrigan" (jail) on a civil *capias,* a common practice of that particular Marshall, and therefore it was impossible to have him released that night as the courts were closed.

14. I then proceeded to attempt to calm Ms. Cannon, assuring her that we would be able to get Mr. Milner released the next day.

15. At no time did she indicate to me that she willingly allowed the police or the Marshall to enter her home and she continued to express to me that they had forced their way into her home and that she felt violated by their actions.

_____
Richard D. Dixon

STATE OF CONNECTICUT    }
                        }    s.s. New London
COUNTY OF NEW LONDON    }

On this the 11th day of April, 2006, before me, the undersigned authority, personally appeared, **Richard D. Dixon**, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, who acknowledged the execution of the same as his free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
Commissioner of Superior Court/Notary Public
My Commission Expires:

| | | |
|---|---|---|
| UNITED STATES DISTRICT COURT | : | DISTRICT OF CONNECTICUT |
| STEVEN MILNER<br>plaintiff | : | NO.3:02CV1929 (SRU) |
| V. | : | |
| LESTER DUNCKLEE, ET AL<br>defendants | : | MARCH 28, 2006 |

## AFFIDAVIT OF ANNE MARIE FOSTER

I, Anne Marie Foster, being over the age of 18, being duly sworn do depose and say: the following is from my own personal knowledge.

1. To the best of my recollection, on the evening of September 30, 2002, I answered a phone call from Heidi Cannon, asking if she could come over and talk to Richard Dixon, with whom I co-habitate.

2. I had known Heidi for a couple of years, ever since she started dating a friend, Steven Milner.

3. She sounded very upset on the phone and wanted to talk to Richard - who is an attorney - because her fiancé, Steve, had been taken from the house by the police.

4. When she arrived, she was visibly agitated. She said two policemen and a Marshall had come to their house and wanted to talk to Steve. When she said he wasn't home, they didn't believe her and wanted to come in and look for him.

5. She told them no and tried to close the door, but one of them blocked it with his foot so that she was unable to close it. They then entered the house without her permission.

1

EXHIBIT 'C'

_____
Anne-Marie Foster

STATE OF CONNECTICUT     }
                         }    s.s. New London
COUNTY OF NEW LONDON     }

On this the 11th day of April; 2006, before me, the undersigned authority, personally appeared, **Anne Marie Foster**, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, who acknowledged the execution of the same as her free act and deed.

**IN WITNESS WHEREOF,** I have hereunto set my hand and official seal.

_____
Commissioner of Superior Court/Notary Public
My Commission Expires:

Valerie E. Bernier
Notary Public
My Commission Expires March 31, 2008

2