August 21, 2006

Honorable Stefan R. Underhill
United States District Court
915 Lafayette Blvd.
Bridgeport CT 06604

**Re:    Milner v. Duncklee, et al.**
       **Docket No. 3:02-cv-01929-SRU**

Dear Judge Underhill:

  This supplemental letter brief is respectfully submitted in response to the Court's invitation at argument last Tuesday on the parties' cross-motions for summary judgment, on behalf of defendants Peckham and Schneider.

  At the outset, these defendants entirely agree that this case is appropriately disposed of on the basis of qualified immunity. Setting aside all other arguments, there can be no real doubt that no "clearly established law", as that term is defined in the Section 1983 jurisprudence, existed at the time of the complained-of conduct by which these defendants could have been fairly apprised of a constitutional prohibition on that conduct. Indeed, as the Court accurately observed at argument, even today the issues surrounding any distinctions between a capias and an arrest warrant constitute "muddy waters." Accordingly, summary judgments should unquestionably enter in favor of the defendants and against plaintiff Milner.

  However, these defendants (or at least their counsel) remain somewhat befuddled by the analysis through which the Court reaches the proposed conclusion that there did occur in this instance a violation of the Fourth Amendment. These defendants respectfully submit that such a ruling would be both erroneous and ill-advised.

  I. This court has already ruled that the "warrant of capias" issued in this case constituted a valid judicial command to Marshal Duncklee and any other "proper officer" to seize the plaintiff's person and bring him before the court, or temporarily to a prescribed detention facility. As the Court has acknowledged (and plaintiff has conceded), on the authority of the capias the defendants would beyond dispute have been entitled and obligated to arrest Mr. Milner on the street, in a parking lot, or anywhere other than in his home. The sole issue in this case, to this point, has been whether the capias also provided authority for the officers to enter the residence of the plaintiff in order to effect that arrest.

  If the undersigned correctly understands the Court's expressed analysis and intended opinion, the capias is not the constitutional equivalent of an arrest warrant, which all parties

Hon. Stefan R. Underhill
August 21, 2006
Page 2

agree would authorize entry into the residence to effect the arrest.  The capias, the Court proposes to rule, does not meet Fourth Amendment standards because it arises in the context of a civil proceeding, not a criminal proceeding.  For this reason the capias cannot be based upon probable cause, because the requirement of probable cause at least "strongly implies" a connection to a criminal proceeding.  As the Court further expressed it at argument, the "missing link" here is probable cause.  Therefore, the arrest of Mr. Milner in his home violated the Fourth Amendment.

The initial, purely logical defect in this analysis, these defendants respectfully contend, is that an absence of probable cause due to the civil context of the underlying proceeding seemingly also obliterates any legal authority under the Fourth Amendment for the arrest itself, in any location.  Conversely, if for some reason this particular arrest need not be preceded by an explicit finding of probable cause, then the capias, in proper view, may not be governed for some purposes or at all by the Fourth Amendment; in which case, the Fourth Amendment's proscriptions do not necessarily bar Milner's arrest in his home.  The third logical possibility is that the issuance of the capias, historically and by accepted principles of jurisprudence, represents an inherent and inherently attested finding of probable cause issued by a magistrate; in which case there appears no reason for, and every reason against, a distinction between a warrant and a capias in the "implicit authority" afforded under each to arrest even in the home.  (See below.)

Before this Court undertakes the proposed, frankly drastic, measure of striking down a centuries-old procedure of the Connecticut courts, a procedure which goes to the very heart of the State's judicial authority, these defendants respectfully urge that circumspection and deference warrant a reconsideration and reversal of the Court's intended course.

II.     The proposed ruling addresses, purely in the context of the Fourth Amendment, the very genesis of the capias in issue and not merely the manner of its service in this instance.  In all three respects, defendants submit, the contemplated ruling is both significantly overbroad in effect and of suspect premise.

Because the capias at issue in this case was plainly intended to redress an acknowledged failure by plaintiff to appear in court when duly summoned, a defalcation presumptively witnessed by the state court itself, the proper focus of the analysis must be on the authority of the court—any court—to address summarily a contempt of that court occurring in its presence, and to compel the appearance of essential witnesses within the jurisdiction.  Viewed in that context, an explicit finding of probable cause is constitutionally superfluous and historically unnecessary, and the reach of the Fourth Amendment is distinctly in question.  (Aspects of this proposition were alluded to by all three defendants in their initial submissions, but it was perhaps not the subject of sufficient focus by any of them.).

There is of course ample Connecticut statutory authority for the issuance of a judicial order to compel the attendance of witnesses and parties at court proceedings.  Under Connecticut

Hon. Stefan R. Underhill
August 21, 2006
Page 3

law, "any court …may commit to a community correctional center any person legally summoned who refuses to appear and testify before it in any case, there to remain until he so testifies." C. G. S. Sec. 51-35(a). Similarly, the statute providing for enforcement of subpoenas by court order simply provides that a "court or judge…may issue a capias directed to some proper officer to arrest the witness and bring him before the court to testify." C. G. S. Sec. 52-143(e). Notably, these statutes and C. G. S. Sec. 54-2(a) exist in a universe of Connecticut law which includes a state constitutional provision essentially identical in all material respects to the Fourth Amendment. Article First, Section 7 of the Connecticut Constitution provides in relevant part that, "no warrant to search any place, or to seize any person or thing, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

That the capias and the warrant co-exist in this universe is testimony to their different characters and the different functions they serve. The capias, when employed (as in this case) pursuant to the statutes, operates to vindicate the authority of the court, to compel future compliance by the recalcitrant, and to facilitate the fundamental operation of the judicial process. From the earliest jurisprudence, courts have recognized an inherent authority to enforce their own orders. E.g., Voss v. Luke, 28 F. Cas. 1302 (C.C.D.C. 1806); Ex Parte Terry, 128 U.S. 289 (1888). In Connecticut, the progenitor of the "civil contempt" statute, C. G. S. Sec. 51-35(a), appeared at least as early as 1711. Ullman v. State, 230 Conn. 698, 704 (1994). It is the court's contempt power that provides the backbone of this authority, in the case of compelled appearance and testimony. Fed. R. Civ. Proc. 45(e). Whether a refusal to testify is specifically termed a contempt or not, the "power to commit …, given to every court, [] is a power given to enforce the duty to appear and testify." In re Application of Clark, 65 Conn. 17, 33 (1894).

When conduct constituting a contempt occurs in the court's presence, "[t]here is no need of evidence or assistance of counsel before punishment, because the court has seen the offense." Pounders v. Watson, 521 U. S. 982, 987-88 (1997). On the same basis, there is no need of a demonstration and finding of probable cause: the court itself has already made that determination, as in this instance where the party-witness did not appear as required. "Civil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." International Union, U. M. W. of America v. Bagwell, 512 U. S. 821, 828 (1994). Implicit in all these cases, indeed not even questioned, apparently, is the absence of any separate requirement under the Fourth Amendment for the simultaneous issuance of a warrant meeting the standards of that provision.

The Due Process Clause surely imposes some limitations on the authority of both state and federal courts to address summarily even acts of contempt occurring in the court's presence. Pounders, 521 U. S. at 987-88; Bagwell, 512 U. S. at 830-31. It is also established as a "fundamental proposition" that "criminal penalties [for contempt] may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings…." Feiock v. Feiock, 485 U.S. 624, 631 (1988). However, "[b]ecause

Hon. Stefan R. Underhill
August 21, 2006
Page 4

civil contempt sanctions are viewed as non-punitive and avoidable, fewer procedural protections for such sanctions have been required." Bagwell, 512 U. S. at 831.  The Connecticut statute authorizing the issuance of a capias in circumstances such as those presented here provides for precisely such civil contempt sanctions.  Ullman, supra at 703.

In the one reported decision located by these defendants that is premised on facts analogous, if not materially identical, to the instant case, the issuance of a capias to procure the appearance of a witness, *and her arrest at her home,* were passed over as unremarkable by the Second Circuit.  Betts v. Richard, 726 F.2d 79, 80 (2d. Cir. 1984). The case turned on the immunity of the prosecutor for the issuance of the capias, but the
manner and location of the witness' arrest drew not a blink from the Court of Appeals.  (Almost astonishingly, that case also originated in Stonington, Connecticut.)

Notwithstanding the apparent historical acceptance of the capias and its particular role, as discussed *supra*, the proposed ruling by the Court here would impose by Federal fiat a determination that such state judicial orders are unenforceable inside the home of the subject. Worse still, the distinction between "criminal and civil contexts" the Court proposes as the underpinning for its ruling would logically appear to make it impossible to *ever* establish "probable cause" to enforce these civil orders in the home, by means of either an arrest or a search warrant.  (It is also noteworthy that, as the U.S. Supreme Court has acknowledged, "[n]umerous scholars have criticized as unworkable the traditional distinction between civil and criminal contempt."  Bagwell, 512 U. S. at 828 n.3.)  It is not mere hyperbole to envision that a subject willing to accept "home confinement" could then indefinitely avoid court appearances, support proceedings, or testifying in a criminal case.  Indeed, this is precisely the outcome urged by Mr. Milner, and the interpretation he sought to take advantage of in avoiding his own child support obligations.  This, quite simply, cannot be and is not the correct answer to the question posed by this case.

III.    In point of actual fact, this case may simply not present the opportunity to reach the question the Court is struggling with, and if it does not, defendants suggest with the greatest possible deference that no such reach should be attempted absent a very steady foundation.  The issues in this case related to the defendants and any liability on their parts are really of secondary importance, especially given the available protections of qualified immunity.  By its proposed finding of a Constitutional violation under the circumstances here, however, this Court would in effect be countermanding in a material way, or at least imposing a significant limitation on, the authority of the Connecticut courts to enforce orders which go to the very heart of the state's judicial power.  It is no exaggeration to suggest that there are few interstices between the state and Federal arenas at which the bedrock principles of comity require greater circumspection and restraint.

At argument, the Court expressed at least one concern about the state of the record at this stage of the case.  The Court noted that the actual capias in issue does not bear the signature of the issuing judge, Hon. Samuel Teller; rather, it bears his name and recites that it is issued "by

Hon. Stefan R. Underhill
August 21, 2006
Page 5

the Court", but it is signed by a clerk.  Def'ts' Mem., Exhibit F.  Whether or not this particular matter is one of constitutional significance, it illuminates clearly an important aspect of the posture of this case.  Because only the "front-line" defendants have been sued, and because of the seemingly patent availability to them of qualified immunity, there has been little or no impetus to defend with particular vigor the "institution" of the capias.  As a result, for example, the Court does not have before it a record which demonstrates Judge Teller's personal observation of the non-appearance by plaintiff, nor direct evidence of his intentions in issuing the capias, nor even conclusive proof that it was issued at his direction.

In this respect, among others, this case is very different from another in which a District Court found unconstitutional a state court procedure for the issuance of a capias.  In <u>Crane v. Texas, et al.</u>, the Fifth Circuit upheld a determination that the Dallas County procedure for issuance of a misdemeanor capias was constitutionally defective because it did not provide for a determination of the existence of probable cause by a neutral, detached magistrate.  759 F.2d 412, 421 (5th Cir. 1985).  Importantly, that defective procedure did not address instances in which the court issuing a capias had itself witnessed the offense; rather, a clerk was issuing the "bench warrant" process based only on an affidavit from the district attorney.  In that case, however, the constitutional issue was considered in a context in which not merely the police officers who had served the capias were defendants; there, because equitable relief had been sought as well as damages, the judges of the County, the District Attorney, and all the other involved officials were also named defendants.  It was they who, in the course of mounting their defenses, undertook to advocate for the constitutional sufficiency of the capias procedure being employed.  Here, before this Court issues a ruling in which it undeniably hamstrings the judiciary of the State of Connecticut in its ability to enforce its own orders, it is respectfully suggested that a further record and opportunity for consideration would be appropriate.

     IV.    In respect to the Court's proposed rulings on the other aspects of plaintiff's claims in this case, these defendants are in agreement with the views expressed by the Court.

                        Respectfully submitted,

                        Scott M. Karsten

This is to certify that a copy of this pleading was transmitted electronically or by regular mail, postage prepaid, to all counsel and pro se parties of record on August 21, 2006.

                        Scott M. Karsten