## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

STEVEN MILNER,
     Plaintiff,

     v.

LESTER DUNCKLEE, BRYAN
SCHNEIDER, and MICHAEL PECKHAM,
     Defendants.

CIVIL ACTION NO.
3:02cv1929 (SRU)

### RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

On September 30, 2002, the defendants arrested Steven Milner in his home.  The arrest was made pursuant to a state court capias issued for failure to appear in a civil case.  Milner subsequently filed a complaint, pursuant to 42 U.S.C. § 1983, alleging principally that defendants violated his Fourth Amendment right to be free from unreasonable searches and seizures.

This case raises the issue whether the capias[1] satisfies the warrant requirement of the Fourth Amendment.  For the reasons that follow, I conclude that it does not and that, therefore, the defendants violated Milner's Fourth Amendment right to be free from unreasonable searches and seizures when they crossed the threshold of his home to serve the capias.  Because in September 2002 it was not clearly established whether a facially valid capias authorized a home arrest, however, defendants are shielded from liability by qualified immunity.

---

[1] The case law reflects a variety of types of documents used to authorize arrests, or at least, a variety of nomenclature used to describe such documents, including a capias, bench warrant, and civil arrest warrant.  Whatever its title, the critical inquiry posits whether the document at issue satisfies the warrant requirement of the Fourth Amendment.  It is the substance of the document and the circumstances leading up to its issuance, not the title or form of the document, that determines whether the document meets the Fourth Amendment standard.

I.      **Relevant Background**

A.      Procedural History

On September 30, 2002, defendants Lester Duncklee, a State Marshal, and Bryan
Schneider and Michael Peckham, Town of Stonington police officers, arrested Steven Milner in
his home.  The arrest was authorized by a capias originally ordered by Superior Court Judge
Samuel Teller in April 1995 and then re-issued and signed by an assistant clerk on September 6,
2002.  *See* Defendants' (Schneider and Peckham) Exhibit F; Traystman Affidavit (doc. # 133) at
¶ 9.  On December 23, 2002, Milner filed an amended complaint (doc. # 5), alleging violations of
his right to be free from unreasonable searches and seizures, illegal forced entry, violations of the
Equal Protection Clause and Due Process Clause, false imprisonment, false arrest, trespass, false
representation, and intentional infliction of emotional distress ("IIED").  On September 15, 2003,
I held oral argument on defendants' motions to dismiss, and I dismissed the IIED claim, false
arrest/false imprisonment claims, and the constitutional claims to the extent that they relied on
false arrest.  I denied the motions to dismiss with respect to the claims of unreasonable search
and seizure and all other claims that depended on that legal theory.  *See* Sept. 15, 2003 Trans.
(Doc. # 65) at 28-30.  The following claims remain:  (1) violation of the Fourth Amendment right
to be free from unreasonable searches and seizures with respect to the alleged illegal entry into
Milner's home without a warrant; (2) violation of the Equal Protection Clause based on a theory
of malice; (3) violation of the Due Process Clause; (4) fraudulent misrepresentation; and (5)
trespass.

In January 2006, Milner filed a motion for summary judgment on all claims, and
defendants subsequently each filed a cross motion for summary judgment.  On August 15, 2006,

I held oral argument on the motions.  At oral argument, I indicated that I intended to write on the issue whether defendants violated Milner's Fourth Amendment right to be free from unreasonable searches and seizures, as well as whether qualified immunity applied.  I also explained how I intended to rule.  After further considering the issues, my ultimate ruling is the same as I suggested at oral argument, although my reasoning is somewhat different.  I also told counsel that my ruling on the record primarily would serve as my decision on all of Milner's other claims, although I discuss those claims briefly below.

      B.    <u>Issuance of the Capias</u>

On April 24, 1995, Milner failed to appear for a hearing before Connecticut Superior Court Judge Samuel Teller, the purpose of which was to address Milner's failure to pay child support.  *See* Traystman Affidavit (doc. # 133).  As a result of Milner's failure to appear at the April 1995 hearing, the judge ordered a capias for Milner's arrest with a $10,000 bond requirement.  The record does not contain a transcript of the April 24, 1995 hearing; thus, there is no record of what specific findings, if any, Judge Teller made.  Milner then left the state of Connecticut.  Sometime in 2002, Gary Traystman, an attorney for Milner's ex-wife, learned that Milner had returned to Connecticut, and Traystman then asked Duncklee to serve the capias on Milner.  *Id.* at ¶ 12.  The capias served on Milner is dated September 6, 2002 and is signed by an assistant clerk, not Judge Teller.  *See* Defendants' (Schneider and Peckham) Exhibit F.

      C.    <u>September 30, 2002</u>

When Duncklee arrived at Milner's home on September 30, 2002 at about 9:30 p.m., Duncklee knocked at the front door, and Heidi Cannon, Milner's girlfriend, opened it.  Duncklee identified himself and said he had an "arrest warrant" for Milner.  He placed his foot against the

door, which was 12-18 inches open, to prevent it from closing.  Cannon told Duncklee that he

could not come in, and she tried to close the door, but could not because Duncklee's foot was in

the doorway.  Duncklee showed the capias to Cannon; she read it, and then handed it back,

repeating that Duncklee could not come in.  Duncklee did not force the door open.  Without

pushing Cannon, Duncklee opened the door when Cannon stepped back.  It is disputed whether

Duncklee leaned against the door.  *See* Defendants' (Schneider and Peckham) Exhibit D at 50.  In

her deposition, Cannon testified that it would be fair to say that the officers could have

reasonably thought that she was not trying to prevent them from entering after she read the capias

and gave it back to Duncklee.

Once inside, defendants commenced a search of the home.  *See* Duncklee Memorandum

(doc. # 136) at 8; Dunklee's Rule 56(a) Statement (doc. # 127-5) at ¶¶ 53-55.  Duncklee asked

Cannon to show him the garage.  He saw Milner's car in the garage and then began to look for

Milner on the second floor.  Milner appeared in the foyer, and Duncklee served him with the

capias.  Milner telephoned his attorney.  Once they were both outside, Duncklee handcuffed

Milner and transported him to Corrigan Correctional Facility.

## II.    Standard of Review

Summary judgment is appropriate when the evidence demonstrates that "there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

256 (1986) (party must present affirmative evidence in order to defeat a properly supported

motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts in the

light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d. 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"), *cert. denied*, 506 U.S. 965 (1992). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but rather must present significant probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991), *cert. denied*, 502 U.S. 849 (1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247-48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of

his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322.  In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23; *accord Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim).  In short, if there is no genuine issue of material fact, summary judgment may enter.  *Celotex*, 477 U.S. at 323.

## III.   Discussion

This case is, in essence, a section 1983 action based on defendants' alleged violation of Milner's right to be free from unreasonable searches and seizures.  With respect to a section 1983 claim, a plaintiff must prove four elements: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; and (4) damages.  *See* 42 U.S.C. § 1983.  The only disputed element is whether defendants deprived Milner of a constitutional right.

### A.    Fourth Amendment Violation

The validity of Milner's arrest is not at issue;[2] the capias clearly authorized the defendants to arrest Milner in a public place.  Rather, the principal issue here is whether the defendants violated Milner's Fourth Amendment right to be free from unreasonable searches and seizures

---

[2] At oral argument, Milner conceded that he does not contest the validity of the arrest itself, but complains that the defendants entered his home and searched for him in order to effect the arrest.

when they entered his home without exigent circumstances and apparently without consent,[3] in order to effectuate that arrest.  Resolution of that issue hinges on whether the capias served on Milner meets the warrant requirement of the Fourth Amendment, or the search and seizure is otherwise reasonable under the Fourth Amendment.

### 1.    *Power to Issue a Capias Authorizing Arrest*

There are several potential sources of the court's authority to issue a capias for Milner's arrest.[4]  It is not clear what source spawned the capias in this case, because there is no transcript of the proceeding in which Judge Teller ordered the capias, nor is there any other evidence identifying the authority relied upon.  In addition, although several state statutes appear to be pre-printed on the upper left corner of the capias itself, that printing is not legible on the record copy

---

[3]  Defendants Schneider and Peckham have argued that Heidi Cannon consented to defendants' entry into the home, and that her consent, therefore, is a basis for granting defendants' motion for summary judgment.  There is no dispute that Cannon told the officers repeatedly that they could not come into the home.  There is also no dispute that defendants only gained access to the home after they told Cannon that they had an "arrest warrant" for Milner's arrest.  Thus, there is at least a disputed issue of material fact whether Cannon gave knowing, voluntary consent.  It would not be appropriate, therefore, to grant summary judgment in favor of defendants on the basis of that argument.  Accordingly, I am denying the defendants' motion for summary judgment to the extent that they argue Cannon consented.  Because the outcome of the case is determined by my ruling on qualified immunity, there is no need to resolve the factual question whether Cannon consented.

[4]  One basis the parties discuss is Conn. Gen. Stat. § 54-2a, providing for the issuance of a capias in a criminal case.  That section does not apply in this case, because this capias arose out of a civil proceeding.  A more likely basis is Conn. Gen. Stat. § 52-143, which applies to witnesses who fail to appear to testify in both civil and criminal cases.  Decisions interpreting that section have held that a court has discretion to issue a capias in order to require an individual to testify in a court proceeding.  *State v. Payne*, 40 Conn. App. 1, 18 (1995); *State v. Burrows*, 5 Conn. App. 556, 559 (1985).  There is also some authority for the proposition that courts have an inherent common law power to enforce their own orders by ordering the arrest of those who disobey orders to appear.  *See In the Matter of Daniel V. Presnick*, 19 Conn. App. 340, 347 (1989).

of the capias.  Discerning the authority under which the capias actually issued, however, is

unnecessary in this case.  Milner is not complaining about the fact of his arrest; he is complaining

about the fact that defendants arrested him in his home without a valid arrest warrant.[5]

Whatever source of authority supports it, the capias must comply with constitutional principles.

### 2.    *What Triggers Fourth Amendment Protections*

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and
> effects, against unreasonable searches and seizures, shall not be violated, and
> no Warrants shall issue, but upon probable cause, supported by Oath or
> affirmation, and particularly describing the place to be searched, and the
> persons or things to be seized.

U.S. CONST. amend. IV.  In the case of a challenged arrest, the Fourth Amendment is implicated

if an individual is "seized."  *Michigan v. Summers*, 452 U.S. 692, 696-97 (1981) (quoting *Terry*

*v. Ohio*, 392 U.S. 1 (1968)).  "[W]henever a police officer accosts an individual and restrains his

freedom to walk away, he has 'seized' that person."  *Id.* at 696 n.5 (quoting *Terry*, 392 U.S. at

16).  Put another way, the seizure of a person is a "meaningful interference, however brief, with

an individual's freedom of movement."  *United States v. Jacobsen*, 466 U.S. 109, 114 (1984).  In

sum, "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view

of all of the circumstances surrounding the incident, a reasonable person would have believed

that he was not free to leave."  *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

Here, there is no dispute that defendants arrested Milner, took him into custody, and held

---

[5] To the extent that defendants Peckham and Schneider argue that my decision regarding
the arrest in the home will cast doubt on the validity of the arrest itself, I reject that argument.
My decision in this ruling relates only to whether Milner's arrest in his home complied with the
Fourth Amendment.  The parties do not dispute – nor do I – that the capias authorized Milner's
arrest elsewhere.

him in jail.  The defendants do not dispute that their arrest of Milner constituted a seizure within the meaning of the Fourth Amendment.  *See*, *e.g.*, Duncklee's Joint Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (doc. # 136) at 8.  Because Milner was "seized" by law enforcement officers, the Fourth Amendment and all of its protections were implicated, and therefore the defendants were required to comply with those protections.

Defendants Peckham and Schneider argued at oral argument and in their supplemental memorandum that, because the capias for Milner's arrest was issued in aid of a civil proceeding, criminal process, including the protections guaranteed by the Fourth Amendment, do not attach. That argument fails, because the Fourth Amendment is triggered not by an accusation of criminal wrongdoing, but by a "seizure" of the person.  *See Summers*, 452 U.S. at 696.  It is well established that the Fourth Amendment applies to seizures made in the civil context as well as the criminal context.  *Glass v. Mayas*, 984 F.2d 55, 58 (2d Cir. 1993) (citing *Soldal v. Cook County, Illinois*, 506 U.S. 56, 67 n.11 (1992)).  Whether or not Milner was guaranteed full criminal due process rights, he was guaranteed the protections of the Fourth Amendment.

  3. *The Fourth Amendment Prohibition on Unreasonable Searches and Seizures*

The Fourth Amendment prohibits unreasonable searches and seizures.  *See generally* 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 5.1 (4th ed. 2004) ("LAFAVE").  The United States Supreme Court has interpreted and clearly defined the concept of reasonableness as it applies to an arrest in an individual's home.  *See Payton v. New York*, 445 U.S. 573, 586 (1980) ("It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable.").  In *Payton*, the

-9-

Supreme Court recognized that the Constitution affords more protections to an individual

arrested in his home than to an individual arrested in public. *Id.* at 585-89. "'[A]t the very core

of the Fourth Amendment stands the right of a man to retreat into his own home and there be free

from unreasonable governmental intrusion.'" *Id.* at 589-90 (quoting *Silverman v. United States*,

365 U.S. 505, 511 (1961)). Thus, "the Fourth Amendment has drawn a firm line at the entrance

to the house. Absent exigent circumstances, that threshold may not reasonably be crossed

without a warrant." *Id.* at 590. "Subsequent holdings have reiterated that principle and 'made

clear that any physical invasion of the structure of the home, by even a fraction of an inch, is too

much to be tolerated.'" *Loria v. Gorman*, 306 F.3d 1271, 1284 (2d Cir. 2002) (quoting *Kyllo v.

United States*, 533 U.S. 27, 37 (2001)).

     One of the primary aims of the Fourth Amendment is to protect against unnecessary

intrusions into private homes. *Welsh v. Wisconsin*, 466 U.S. 740, 748-49 (1984) (extending

*Payton* to a factual scenario involving a home arrest for a non-criminal traffic violation). "It is

axiomatic that the 'physical entry of the home is the chief evil against which the wording of the

Fourth Amendment is directed.'" *Id.* at 748 (quoting *United States v. United States District

Court*, 407 U.S. 297, 313 (1972)). The warrant requirement is the main safeguard against that

evil. *Id.* The primary purpose of the warrant requirement is to take the task of finding probable

cause out of the hands of interested officers and to put the task in the hands of a detached, neutral

judge or magistrate. *Id.* ("And a principal protection against unnecessary intrusions into private

dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the

government who seek to enter the home for purposes of search or arrest."); *see also Payton*, 445

U.S. at 586. A pre-seizure judicial determination of probable cause is required for an arrest in

the home because of the heightened privacy interests in the home.  *See Payton*, 445 U.S. at 586.

That is why courts have developed a relatively bright-line rule requiring a facially valid warrant

to justify the seizure of a person in the home.  *Welsh,* 466 U.S. at 749.

The Supreme Court has suggested that the Fourth Amendment warrant requirement

becomes more compelling as the offense for which an arrest is made becomes less serious.  *See*

*Welsh*, 466 U.S. at 750 n.12, 752.  In *Welsh*, the Court noted that even the dissenters in *Payton*,

who thought that law enforcement officials should be able to make warrantless felony arrests in

the home, "recognized the importance of the felony limitation on such arrests."  *Id.*  The Court

held that the warrantless entry to arrest for a non-jailable traffic violation was prohibited by the

Fourth Amendment.  *Id.* at 748-52.  *See also State v. Ruden*, 774 P.2d 972, 977-78 (Kan. 1989)

(holding that a bench warrant issued in a "limited action" civil case based on an individual's

failure to appear did not constitute a valid arrest warrant sufficient to authorize a home arrest).

In addition, the Court suggested, though declined to decide, that for non-felony offenses,

even exigent circumstances would not permit a justifiable exception to the warrant requirement

for home arrests.  *Welsh*, 466 U.S. at 750 n.11, 751.  "Before agents of the government may

invade the sanctity of the home, the burden is on the government to . . . overcome the

presumption of unreasonableness that attaches to all warrantless home entries."  *Id.* at 750 (citing

*Payton*, 445 U.S. at 586).  The Court reasoned that "[w]hen the government's interest is only to

arrest for a minor offense, that presumption of unreasonableness is difficult to rebut . . . ."  *Id.*

Not only is a warrantless home arrest for a "civil" traffic violation "clearly prohibited by the

special protection afforded the individual in his home by the Fourth Amendment," but the Court

also suggested that a home arrest for a minor offense demands a more exacting Fourth

Amendment analysis.  *See id.* at 750-55.

In sum, an arrest of an individual in his own home is reasonable only if it is supported by a valid arrest warrant, exigent circumstances, or consent.  *See Payton*, 445 U.S. at 586-87, 590; *Welsh*, 466 U.S. at 749-55.

### 4.  *Requirements for a Valid Arrest Warrant*

As a matter of first principles, therefore, no matter what defendants assert as the basis for their authority to arrest Milner, that basis must comply with the fundamental Fourth Amendment standards just described.  In other words, even if, as defendants argue, a capias is the functional equivalent of a warrant, that document – whatever its title – must comply with the Fourth Amendment in order to support a home arrest.  Because exigent circumstances and consent are not present here, the only way that the arrest of Milner in his home could be reasonable is if the capias constitutes a valid arrest warrant under the decisions interpreting the Fourth Amendment.

### a.    Four Basic Requirements

An arrest warrant that complies with the Fourth Amendment has four essential attributes. It must:  (1) be supported by probable cause; (2) be issued upon a probable cause determination based on oath, affirmation, or sworn testimony setting forth the underlying facts and circumstances giving rise to probable cause; (3) describe the persons or things to be seized with particularity; and (4) be issued by a neutral and detached magistrate.  *See generally* 3 LaFave § 5.1(h); *see also Payton*, 445 U.S. at 602-03 (holding that an arrest warrant *founded on probable cause* authorizes the limited entry into a home for the purpose of making an arrest) (emphasis supplied); *Welsh,* 466 U.S. at 749 n.10 (emphasizing that the central point of the warrant requirement is to require a neutral and detached figure to draw inferences and make an actual

finding of probable cause); *Ruden*, 774 P.2d at 978.

        b.      Definition of Probable Cause

When an arrest is made for purposes of criminal law enforcement, the term probable cause means that there is probable cause to believe that an offense has been committed and that the person to be arrested has committed it.[6] *See, e.g.*, 2 LaFave § 3.1(b) n.30; *Gerstein v. Pugh*, 420 U.S. 103, 111-12 (1975). "When arrests are made for other purposes, the probable cause requirement may still apply, but the probable-cause-as-to-what question must be answered somewhat differently." 2 LaFave § 3.1(b) n.30. The Fourth Amendment applies to both criminal and noncriminal encounters. *Soldal*, 506 U.S. at 67. For example, when the state seizes a mentally ill person against his or her will, that "protective seizure" constitutes an arrest that is governed by the Fourth Amendment. 2 LaFave § 3.1(b) n.30. There must be probable cause to arrest the person, but the probable cause is not defined with reference to a criminal offense, but rather with reference to the requirements that have been set for an involuntary commitment. *Id.*; *Glass*, 984 F.2d at 58 ("That his seizure occurred in the civil context does not render the Fourth Amendment inapplicable."). A seizure in the civil context must also be reasonable, meaning that it must be "'made only upon probable cause, that is, only if there are reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard.'" *Glass*, 984 F.2d at 58 (quoting *Villanova v. Abrams*, 972 F.2d 792, 795 (7th Cir. 1992)).

Similarly, noncriminal regulatory inspections of residences trigger Fourth Amendment

---

     [6] "The quantum of evidence required lies somewhere between bare suspicion and proof beyond a reasonable doubt, and is usually said to require personal knowledge or reasonably trustworthy information from others sufficient to warrant a man of reasonable caution to reach these conclusions." 5 LaFave § 10.1(b) (citing *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)).

protections, although that scenario typically involves searches, rather than seizures.  *See*

*generally* 5 LaFave § 10.1(a)-(d).  When the government enters a private residence for purposes

of enforcing building code regulations, or other similar public safety and welfare ordinances, the

government actor is required to obtain a warrant founded on probable cause.  *See* 5 LaFave §

10.1 (a) (citing *Camara v. Municipal Court*, 387 U.S. 523 (1967); *See v. City of Seattle*, 387 U.S.

541 (1967)).  *See also id.* at § 10.3 (a) (discussing the need for a warrant founded on probable

cause in the context of state welfare and child abuse inspections).  Probable cause in the

regulatory or administrative context is not necessarily defined in terms of whether a crime has

been committed; rather, in that context, probable cause generally depends upon the existence of

certain factors relevant to the particular ordinance or administrative guideline at issue.  *See id.* at

§ 10.1 (a).  However the probable cause inquiry may be affected by the context or purpose of the

seizure or search, the Fourth Amendment requires that a neutral judge or magistrate decide

whether probable cause exists, that is, whether "there are reasonable grounds for believing that

the person seized is subject to seizure under the governing legal standard."  *Glass*, 984 F.2d at 58

(internal quotation omitted).

Only a warrant that meets each of the Fourth Amendment requirements will suffice to

authorize the arrest of an individual in his home.

5.      *Whether the Capias Complied With the Requirements for a Valid Warrant*
        *Under the Fourth Amendment*

This case presents a challenging question.  The defendants arrested Milner in his home

without consent or exigent circumstances for a minor offense.  Defendants did not have an

"arrest warrant."  Now, defendants have been called upon to justify that arrest.  They do so by

pointing out that they were armed with a capias that ordered them to seize Milner.  Therefore, this was not a typical "warrantless" arrest.  Rather, defendants argue, this arrest was supported by a valid "warrant," because either: (1) a capias is legally the same thing as a valid arrest warrant within the meaning of the Fourth Amendment; or (2) this capias is factually the same as a valid arrest warrant and thus is its functional equivalent for constitutional purposes.

a.      Whether a Capias is Legally the Same as an "Arrest Warrant"

Defendants argue at length about the significance of the title "capias" and its relation to the title "warrant" or "arrest warrant," but that argument is largely beside the point in determining whether a particular document complies with the Fourth Amendment.  Defendants argue that there is some support for the proposition that a capias is legally the same thing as an arrest warrant, because at common law the terms "writ of capias" and "warrant" were used interchangeably.  *See* Duncklee Memorandum (doc. # 136) at 10.  There is also some suggestion in the legislative history of Conn. Gen. Stat. § 54-2a, the statutory basis for issuing a capias in a criminal case, that the terms capias and warrant were used interchangeably.  *See id.* at 12-16.

Defendants succeed in showing that a capias is a type of warrant, i.e., that a capias is a "warrant" according to the general definition of the word warrant.  Indeed, a "warrant" is a writ directing a law enforcement official to make a seizure, so a capias certainly is a type of warrant.  BLACK'S LAW DICTIONARY 1579 (7th ed. 1999).  Defining a capias as a type of warrant, however, merely begins the inquiry.  No capias and no warrant necessarily meets the requirements of the Fourth Amendment merely because it is a capias or a warrant.  Defendants cite *Betts v. Richard*, 726 F.2d 79 (2d Cir. 1984), noting that the Second Circuit apparently saw no problem with a home arrest pursuant to a capias.  *Betts*, however, has no bearing here.  It was

-15-

a decision addressing prosecutorial immunity.  The Court did not note whether the capias was

supported by a probable cause finding, nor is it even clear whether Betts was arrested in her

home; the decision notes she was arrested "at her home."  *Id.* at 80.  Thus, *Betts* is not authority

that, as a matter of law, a capias permits entry into the home to effect an arrest.

A document's title does not determine whether the document complies with the Fourth

Amendment as a matter of law.  The question whether a capias or warrant complies with the

Fourth Amendment is necessarily a factual question.[7]

> b.    Whether the Capias in this Case Satisfies the Fourth Amendment

The next question is whether the capias served on Milner meets all of the requirements

that the Supreme Court has delineated for a valid warrant for arrest in the home.  I conclude that,

based on the record evidence, reasonable jurors could not find that this capias meets the

requirements of a valid home arrest warrant, particularly because reasonable jurors could not find

that it was supported by a probable cause determination.

In order to arrest a person in his home, a law enforcement official must first obtain an

arrest warrant founded on probable cause.  *See Payton*, 445 U.S. at 603.   The whole point of the

warrant requirement is to take the probable cause decision away from law enforcement officials

---

[7] Even the issuance of a traditional "arrest warrant" does not guarantee that the Fourth Amendment has been satisfied, because a warrant could be issued on the basis of faulty affidavits.  *See Golino v. City of New Haven*, 950 F.2d 864, 870-71 (2d Cir. 1991) (analyzing claim that arrest warrant was obtained through allegedly misleading affidavits by correcting arrest warrant affidavit to exclude misrepresentations and include material omissions); *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).  The facts that a document is titled "warrant" and has been signed by a judicial officer may, however, permit a presumption that a finding of probable cause has been made.  *See United States v. Spencer*, 684 F.2d 220, 222-24 (2d Cir. 1982) (apparently assuming that a document labeled bench warrant was issued upon finding of probable cause).

and put that decision in the hands of a neutral and detached figure. *Welsh*, 466 U.S. at 749 n.10. Although it is sufficient for a law enforcement official to make a probable cause determination when a person is arrested in public, the Supreme Court has determined that the sanctity of the home requires heightened protections, requiring that a detached, neutral magistrate make a probable cause determination. Thus, unless an exception to the warrant requirement applies, when a person is arrested in his home, it is not enough that there is probable cause to arrest, even undisputed probable cause to arrest.[8] Rather, a detached, neutral magistrate must actually make a finding that probable cause exists.

Normally, a finding of probable cause is based on affidavits or sworn testimony given by law enforcement officials. *See* 3 LaFave § 5.1. No one suggests that Judge Teller took affidavits or sworn testimony before issuing the capias. An alternative basis for issuing a warrant arises, however, when the facts and circumstances giving rise to the existence of probable cause are within the issuing judge's personal knowledge. It should be noted that the defendants cite no authority for the proposition that Connecticut recognizes a "personal knowledge" exception to the oath or affirmation requirement, nor have I found any such authority.[9] *See* Duncklee

---

[8] Defendants argue that the parties' Rule 56 statements indicate that it is undisputed that Milner failed to appear at the April 1995 hearing. While that is true, it should not be confused with the question whether there is evidence that Judge Teller made a finding of probable cause, which is what would be required to justify the arrest of Milner in his home. In other words, an officer could have in his possession indisputable evidence that a person committed a crime. Armed with such evidence, the officer can arrest the person in public, but if the officer wants to arrest that person in his home, the officer must first obtain a warrant issued upon a probable cause determination by a neutral judge or magistrate, or must comply with a defined exception to the warrant requirement.

[9] In *Spencer*, 684 F.2d at 222-24, the Second Circuit considered a case in which the police entered Spencer's home and arrested him pursuant to a bench warrant. The Court concluded that the issuance of a bench warrant constituted a finding by a neutral magistrate that Spencer failed

Memorandum at 20-21.  The personal knowledge exception could, however, be inferred from the general definition of the quantum of evidence required to constitute probable cause:  "The quantum of evidence required lies somewhere between bare suspicion and proof beyond a reasonable doubt, and is usually said to require *personal knowledge* or reasonably trustworthy information from others sufficient to warrant a man of reasonable caution to reach these conclusions."  5 LaFave § 10.1(b) (quoting *Brinegar*, 338 U.S. at 175-76 (emphasis supplied)).

In *State v. Davidson*, 260 Neb. 417 (2000), the Nebraska Supreme Court addressed a similar situation.  The Court's reasoning is instructive in this case.  In *Davidson,* a county court judge issued a warrant for Davidson's arrest, because Davidson failed to appear at a show cause hearing to explain why he should not be required to pay a judgment.  *Id.* at 422.  The "bench warrant" did not include an affidavit or other sworn statement establishing probable cause.  Davidson later challenged the validity of the warrant.[10]  Davidson argued that the arrest warrant

---

to appear in a criminal case, and that the bench warrant authorized police to seize Spencer anywhere they could find him.  Although the Court did not explain the basis for that conclusion, apparently the Court determined that a neutral magistrate made a probable cause finding.  Here, there is no evidence that a neutral judge or magistrate made a probable cause finding.  In addition, in *Spencer*, the Court held that in order to comply with the Fourth Amendment, the officers had to have reason to believe that the suspect was in his home when they entered the home pursuant to the bench warrant to arrest him.  *See also Payton*, 445 U.S. at 601.  In this case, defendants did not have reason to believe Milner was home.  The defendants went to the home in the evening, because they believed people are generally home in the evening.  They had no reason to believe that Milner actually was home, however, as evidenced by the fact that, after they entered the home, they asked to see the garage to determine whether or not Milner's car was there.

[10] When officers arrested Davidson (presumably in his home), they found him in possession of narcotics and charged him with that offense.  Davidson moved to suppress the narcotics on the basis that the arrest warrant was invalid.  Thus, the *Davidson* case developed as a result of criminal proceedings, but based on the initial judge-issued warrant for a failure to appear/failure to pay a fine.

-18-

was invalid, because even though it was issued by a judge, it was unsupported by an affidavit establishing probable cause.  The government argued that an arrest warrant does not need to be supported by an affidavit establishing probable cause when it is issued based on the personal knowledge of the issuing magistrate or judge, as is often true in cases of failure to appear or failure to pay.  *Id.* at 423.  The government argued that the warrant bore the signature of the county court judge, and that the failure to appear was a violation within the personal knowledge of the judge, as is other information that would establish probable cause (e.g., information in the court file about the circumstances leading up to the failure to appear).

The Nebraska Supreme Court emphasized the principle that generally the lack of a sufficient affidavit or supporting document establishing probable cause will make an arrest warrant invalid.  *Id.* at 422-24 (citing *Illinois v. Gates*, 462 U.S. 213 (1983)).  The Court noted, however, that in many jurisdictions there is a "personal knowledge" exception to the affidavit requirement, recognizing "the commonsense notion that there is no point in a judge executing an affidavit when the judge has personal knowledge of facts establishing probable cause."  *Id.* at 424 (citing cases from various jurisdictions).  The personal knowledge exception is based on the principle that the court acts on its solemn oath of office, and it would be unreasonable to require the judge to swear to an affidavit if the judge has personal knowledge sufficient to support a finding of probable cause.  *See id.*

The Court held that, where the facts giving rise to probable cause are within the judge's personal knowledge, a bench warrant issued without a supporting affidavit could potentially satisfy the Fourth Amendment.  *Id.* at 424-25.  The Court set the following standard for a warrant based on personal knowledge:

-19-

> In order for such a warrant to be valid, however, the face of the warrant, must:  (1) set forth the facts giving rise to probable cause for the issuance of the warrant, and (2) affirmatively state that the issuing judge either (a) personally witnessed the events recited in the warrant or (b) personally reviewed the official records of the court, thus ensuring that the validity of the data in the court records is adequately scrutinized by the issuing judge or magistrate.

*Id.* at 425.  In *Davidson*, the Court concluded that the warrant was not valid, because it simply recited that Davidson failed to appear; it did not show on its face how the issuing judge became aware of the failure to appear.

In this case, defendants argue, without citing to the record, that Judge Teller made "an independent finding of probable cause" before issuing the capias.  That assertion rests on defendants' assumption that Judge Teller had personal knowledge of Milner's failure to appear and the events leading up to it.  *See* Duncklee's Memorandum in Support of Summary Judgment (doc. # 127-2) at 20.  The defendants assume that the judge made a finding of probable cause, presumably because it is essentially undisputed that Milner in fact failed to appear in April 1995.  Even though Milner failed to appear, it does not necessarily follow that Judge Teller actually made an "independent finding of probable cause."  To the extent the defendants cite the record, it is to show that Milner failed to appear, not to show that Judge Teller made a finding of probable cause in support of issuance of the capias.  For purposes of determining whether a capias validly authorizes a home arrest, that distinction is critical.

There is nothing on the face of the capias itself, or anywhere in the record, suggesting that Judge Teller actually made a probable cause determination, meaning a finding that there were "reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard."  *See Glass*, 984 F.2d at 58 (internal quotation omitted).  Even assuming for

purposes of this motion that Judge Teller had sufficient information at his disposal to make a

probable cause determination based on his personal knowledge, there is simply no evidence in

the record from which reasonable jurors could find that Judge Teller actually did so.  That is

problematic because, even if it is sufficient for a judge to rely on his personal knowledge rather

than an affidavit supported by oath or affirmation, the judge must still make an actual finding of

probable cause in order for a document purporting to be an arrest warrant to satisfy the warrant

requirement of the Fourth Amendment.  *See Payton*, 445 U.S. at 602-03.

Judge Teller did not sign the capias served on Milner; an assistant clerk signed it.[11]  That

fact is particularly relevant in this case, because the defendants argue that the capias contains an

implicit finding of probable cause based on Judge Teller's knowledge of the underlying events.

That argument is undercut by the fact that Judge Teller did not actually sign and adopt the

---

[11] The Supreme Court has held that under appropriate circumstances, a court clerk can
serve the function of a neutral magistrate without violating the Fourth Amendment.  *Shadwick v.
City of Tampa*, 407 U.S. 345, 352 (1972) (holding that clerks of the court may issue warrants
pursuant to state statutes granting such authority).  It appears that the Connecticut General
Statutes grant authority to clerks to sign certain types of warrants but not others.  *Compare* Conn.
Gen. Stat. § 52-143 (authorizing "court" to issue subpoenas for witnesses to testify and capiases
for failure to testify), *and* Conn. Gen. Stat. § 54-2a (authorizing "the Superior Court" to issue
bench warrants and capiases under appropriate circumstances), *and* Conn. Gen. Stat. § 54-82j
(authorizing "the clerk or any assistant clerk" of the Superior Court to issue warrant for arrest of
material witness in criminal case), *with* Conn. Gen. Stat. § 54-33a (requiring a "judge of the
Superior Court or judge trial referee" to issue a search warrant authorizing a search of the home),
*and* 4 Conn. Prac., Criminal Procedure § 36-1 (formerly § 593) (requiring a "judicial authority"
to issue a warrant for arrest upon a finding of probable cause), *and State v. Cook*, 183 Conn. 520,
521-22 (1981) (holding that Practice Book Section 593 requires arrest warrant to contain a
judicial signature, not signature of court clerk, in order to constitute valid arrest warrant).  Even if
a clerk has authority to sign certain types of warrants under Connecticut law, a clerk's signature
does not comply with the Fourth Amendment in this case, where the asserted basis of probable
cause is the personal knowledge of Judge Teller, and the capias does not state on its face that it
issued as a result of a finding of probable cause.  Because Judge Teller's personal knowledge
provides the only arguable source of probable cause, Judge Teller would have to sign the capias
for the personal knowledge exception to apply.

document that defendants argue constitutes a valid arrest warrant.  The validity of defendants'

argument is further undercut by the fact that the capias was dated September 2002, but Judge

Teller allegedly ordered the capias in April 1995; it is therefore not apparent that anyone with

personal knowledge of Milner's failure to appear in 1995 participated in the issuance of the

capias in 2002.  There is no evidence that the assistant clerk who signed the capias form in 2002

made a finding that there was probable cause to arrest Milner.  Moreover, neither the capias itself

nor any of the record evidence before me indicates that Judge Teller determined, either in 1995

or in 2002, that there was probable cause to arrest Milner.

In addition to making a finding that Milner failed to appear, Judge Teller would have also

needed to determine that Milner had been "duly summoned" and had been given notice to appear

in court at the appointed time.  *See* Defendants' (Peckham and Schneider) Exhibit F; *see also*

Conn. Gen. Stat. § 52-143; *Burrows*, 5 Conn. App. at 559.  The pre-printed language on the

capias form reads:

> Whereas, the above-named person was duly summoned, ordered, subpoenaed
> or otherwise required by law to appear before this court on the above date,
> and said person failed to appear . . . whereas, the court orders the issuance of
> this capias and sets the conditions of release . . . .

The pre-printed language on the capias form merely recites that the person named on the form

was "duly summoned" and failed to appear in court.  The language on the capias form does not

state that the presiding judicial officer made a finding that, as a result, there was probable cause

under the governing legal standard to arrest the person named on the capias.  Had Judge Teller

signed the capias, the pre-printed language might have constituted a presumed finding, based on

personal knowledge or a review of court records, that Milner had been duly summoned or was

otherwise required to appear in court.  Absent Judge Teller's signature, the pre-printed form does not satisfy this requirement of the Fourth Amendment, because no one – not Judge Teller, another judge, or even a clerk – made a finding that there was probable cause to arrest Milner.

Defendants contend that courts have an inherent common law power as well as statutory power to enforce their own orders and to ensure the efficient administration of justice.  I generally agree with defendants on that point.  Certainly, I agree that a court has the power, under appropriate circumstances, to enforce its own orders by having someone arrested for failing to appear in a proceeding before the court.  Defendants then claim that, because a court has the power to enforce an order by issuing a capias for an individual's arrest, the capias necessarily authorizes the arrest of the individual in his home, without regard to whether the capias is founded on probable cause.

That argument fails, because it ignores the fundamental principle that whatever power a judge has to enforce court orders is limited by the United States Constitution.  Because Milner was seized in his home, he is guaranteed the protections of the Fourth Amendment.  The decisions interpreting the Fourth Amendment require that an arrest warrant be founded on probable cause in order to permit an arrest in the home.  For the reasons discussed above, reasonable jurors could not find that the capias served on Milner was issued following a finding of probable cause.

Importantly, I do not suggest that a capias issued in a civil proceeding can never authorize a home arrest, or that a judge cannot enforce court orders by authorizing arrest.  On the contrary, a capias that satisfies the requirements of the Fourth Amendment would authorize a home arrest.  Moreover, a capias can, and in this case did, properly authorize arrest.  As a result of the issuance

of that capias, defendants could have arrested Milner in any public place.  They could have

knocked on Milner's door and obtained valid consent to execute the capias.  What they could not

do, even with that capias in hand, is enter Milner's home to arrest him without consent or exigent

circumstances, because this particular capias did not satisfy the Fourth Amendment.

Defendants argue that the policy and legislative history behind the statutes authorizing

issuance of a capias dictate that judges must have the power to be able to bring individuals before

them, and that the power of the capias must extend to an individual's home, or else an individual

could hide out in his home.  The United States Supreme Court flatly rejected that argument in

*Payton*, reasoning that "such arguments of policy must give way to a constitutional command

that we consider to be unequivocal."  *Payton*, 445 U.S. at 602.  The Court also noted that it had

found no empirical evidence that the warrant requirement significantly hindered law enforcement

efforts.  *Id.*

> c.   Whether the Capias is Otherwise Reasonable Under the Fourth
>       Amendment

There are certain instances when the reasonableness of a search or seizure hinges not on a

finding of probable cause but on some lesser standard – sometimes in the criminal context (e.g., a

*Terry* stop), sometimes in the civil context (e.g., certain administrative searches).  Those types of

situations are not applicable here.  Defendants entered Milner's home, arrested him, and put him

in jail.  Those circumstances are very similar to the scenario the Supreme Court described in

*Welsh*, 466 U.S. at 748-52, involving a warrantless home arrest for a "civil" traffic offense.  In

that case, the Court did not hold that a lesser standard than probable cause would be required.

On the contrary, the Court held that a warrant founded on probable cause was required, and even

suggested that for a less significant offense, more constitutional scrutiny, rather than less, would be required.  *See Welsh*, 466 U.S. at 748-52.

> 6.     *Summary of Fourth Amendment Violation*

The capias in this case fails to comply with the Fourth Amendment, primarily because there is no evidence that a neutral judge or magistrate made a finding of probable cause. Therefore, defendants arrested Milner in his home without a valid arrest warrant, consent, or exigent circumstances.  The home arrest was per se unreasonable, and I conclude that defendants violated Milner's Fourth Amendment right to be free from unreasonable seizures.  Because the defendants entered and searched Milner's home without a valid search warrant, consent, or exigent circumstances, the entry and subsequent search also violated Milner's right to be free from unreasonable searches.

> B.     <u>Qualified Immunity</u>

The doctrine of qualified immunity shields governmental officials from liability for conduct taken within the scope of their official duties, as long as "'their conduct does not violate a clearly established constitutional right of which a reasonable person would have known.'" *Huminski v. Corsones*, 386 F.3d 116, 143 (2d Cir. 2004) (quoting *Shecter v. Comptroller of the City of New York*, 79 F.3d 265, 268 (2d Cir. 1996)).  "Clearly established means that (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful."  *Pabon v. Wright*,  459 F.3d 241, 255 (2d Cir. 2006) (quoting *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003)).  Even if a right is clearly established, a defendant may still establish immunity by "'showing that reasonable persons in their position would not

have understood that their conduct was within the scope of the established prohibition.'"

*LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998) (quoting *In re State Police Litig.*, 88 F.3d 111, 123 (2d Cir. 1996)).

Determining whether or not a right is clearly established at any given time, depends in large part, on how that right is defined.  With respect to defining the right at issue, the Second Circuit has noted:

> The chronic difficulty with this analysis for courts is in accurately defining the right at issue. An overly narrow definition of the right can effectively insulate the government's actions by making it easy to assert that the narrowly defined right was not clearly established.  On the other hand, as the Supreme Court noted in *Anderson*, if the right is defined too broadly, "[p]laintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."

*LaBounty*, 137 F.3d at 73-74 (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).  In addition, both the First and Fourth Circuits have held that "in determining whether the specific right allegedly violated was clearly established, the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged."  *Malek v. Knightly*, 1995 WL 338178, *2 (1st Cir. 1995) (unpublished decision) (citing *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994)).

In *Malek*, 1995 WL 338178 at *1-3, a case involving facts similar to this case, the First Circuit granted qualified immunity.  In *Malek*, the defendant deputy sheriffs entered Malek's home without his consent and arrested him.  The sheriffs had a capias for his arrest, because Malek failed to appear at a court hearing.  Malek brought a section 1983 claim against the sheriffs, claiming violations of his right to be free from unreasonable seizure, pursuant to the Fourth and Fourteenth Amendments.  The District Court had dismissed the case at the motion to

dismiss stage, and the First Circuit affirmed.

Malek argued that a capias is not an arrest warrant, and thus, it does not authorize an arrest in the home.  Defendants argued that they were entitled to immunity because they executed a facially valid warrant.  The First Circuit reasoned that the capias authorized defendants to arrest Malek, but citing *Payton*, the First Circuit questioned whether the bench warrant for civil contempt authorized an arrest in Malek's *home*.  The Court declined to answer that question, and instead ruled that the defendants were entitled to qualified immunity, because objectively reasonable officers should not have known that their actions violated Malek's Fourth Amendment rights, if in fact they did.  *Id.* at *2.

The question whether a capias or other form of court order authorizes an arrest in the home raises a recurrent problem.  Unless and until the Second Circuit decides the merits of the constitutional question, qualified immunity will prevent the victims of unconstitutional searches and seizures from obtaining redress.  The Supreme Court has directed the lower courts to define the scope of constitutional rights before reaching the merits of a claim for qualified immunity, in order to further develop the law.  *See, e.g., County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998); *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (internal citations omitted).  In this case, I conclude that defendants violated Milner's right to be free from unreasonable searches and seizures by arresting him pursuant to a capias that authorized arrest but that did not meet the requirements of the Fourth Amendment to authorize a valid arrest in the *home*.  It is a close call whether qualified immunity protects defendants from liability.  The capias served on Milner was not signed by a judge, and the words "probable cause" do not appear on the face of the capias.

In addition, the document served on Milner was labeled a "capias," not an "arrest

-27-

warrant" or "bench warrant."  Although nomenclature is not dispositive, it is significant under

Connecticut law.  Section 54-2a of the Connecticut General Statutes governs the issuance of

bench warrants and capiases in criminal cases.  Because the capias served on Milner arose out of

a civil case, that statute does not directly apply, but the statute is instructive.  Section 54-2a

requires a finding of probable cause before a bench warrant may issue, but section 54-2a does not

require a finding of probable cause before a capias issues.  *See* Conn. Gen. Stat. § 54-2a (a).  *See*

*also* Conn. Gen. Stat. § 54-33a (providing that search warrant may issue only after finding of

probable cause and warrant must state "the grounds or probable cause for its issuance").

Because of the statutory probable cause requirement, an officer effecting an arrest pursuant to a

bench warrant or conducting a search pursuant to a search warrant issued by a Connecticut judge

would have a good faith basis for believing that the warrant is supported by a finding of probable

cause.  The same is not true for capiases; because a capias can issue without a probable cause

determination, an officer serving a capias has no reason to believe that a capias satisfies the

Fourth Amendment requirements for an arrest in the home.  I hold that it is not objectively

reasonable for an officer to believe a capias authorizes an arrest in the home unless, at a

minimum, the document is either signed by a judge or magistrate, or is signed by a clerk of the

court and indicates on its face that it is issued upon a finding of probable cause.

Nevertheless, the law was not clearly established in September 2002 whether a capias

authorized a home arrest.  Defendants had a piece of paper signed by a Superior Court clerk, and

apparently issued by a Superior Court Judge, that ostensibly authorized seizure.  The capias

commanded defendants to seize Milner.  There is no Supreme Court or Second Circuit case

directly addressing the validity of a home arrest pursuant to a capias.  Therefore, reasonable

officers in defendants' position could have disagreed about whether the capias authorized an arrest in the home.

Milner argues that the right to be free from unreasonable seizures, particularly with respect to the need for law enforcement officials to obtain a valid arrest warrant before arresting a person in his home, is clearly established. Milner defines the right at issue broadly. The specific facts of this case, however, demand a narrower definition. Although reasonable officers would know that a home arrest must be made pursuant to a valid warrant, they should not have known that the capias did not comply with the Fourth Amendment. There is little case law on the relationship between a capias and a traditional arrest warrant. *See Casselman v. Indiana*, 472 N.E.2d 1310, 1313 (Ind. App. 3 Dist. 1985). The courts that have addressed the issue have struggled, and have, in some cases, avoided the issue. *See Malek*, 1995 WL 338178 at *2-3. Therefore, the right is more appropriately defined as Milner's right to be free from unreasonable seizure in his home where defendants possessed a court-issued document authorizing arrest. Whether a court-issued document authorizing arrest constituted a valid warrant authorizing arrest in the home was not clearly defined in 2002 and is not clearly defined today. Thus, qualified immunity protects each of the defendants on Milner's unreasonable search and seizure claims.

C.    Additional Constitutional and State Law Claims

I am denying Milner's motion for summary judgment on all remaining counts, and I am granting summary judgment in favor of the defendants on all of Milner's remaining claims, except for his claim for trespass. I decline to exercise jurisdiction over that claim pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), and dismiss that claim without prejudice to Milner bringing it in state court. *See also* 13B WRIGHT, MILLER, & COOPER,

FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 3567.1 (2d ed. 1984).  My ruling on the

record at oral argument, in addition to the discussion below, will serve as my ruling on those

claims.

       1.     *Equal Protection Clause Claim*

I am granting defendants' motions for summary judgment and denying Milner's motion

for summary judgment on his Equal Protection Clause claim.  Milner's Equal Protection Clause

claim is based on a theory that defendants acted maliciously and with bad faith to injure Milner.

*See* Milner Memorandum in Support of Summary Judgment at 10.  In order to prove an equal

protection violation based on selective enforcement, Milner must show that (1) defendants

selectively treated him less favorably compared with others similarly situated; and (2) such

selective treatment was based on impermissible considerations such as race, religion, intent to

inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a

person.  *Crowley v. Courville*, 76 F.3d 47, 52-53 (2d Cir. 1996).  Milner claims that the fact that

defendants had a capias, not an "arrest warrant," and that they arrested him in his home on that

basis, creates an inference that they acted deceitfully and maliciously.  Reasonable jurors could

not find that defendants acted maliciously based on that fact alone and there are no other facts in

the record to support an inference of malice.  More importantly, however, there is no evidence at

all of selective treatment compared with others similarly situated.  Therefore, summary judgment

in favor of defendants is proper.

       2.     *Due Process Clause Claim*

Milner has also raised a Due Process Claim, based essentially on the same theory as his

Fourth Amendment claim.  As discussed on the record, Milner's Due Process Clause claim fails

for the same reasons that his Fourth Amendment claim fails.  Defendants are protected by the

doctrine of qualified immunity, and therefore summary judgment shall enter in their favor.

3.     *Fraudulent Misrepresentation Claim*

There are four elements to the tort of fraudulent misrepresentation: (1) a false

representation was made as a statement of fact; (2) it was untrue and known to be untrue by the

person making it; (3) it was made to induce the other party to act on it; and (4) the party acted on

the representation and was injured as a result.  *Suffield Development Associates Ltd. Partnership*

*v. National Loan Investors, L.P.*, 260 Conn. 766, 777-78 (2002).  Here, the allegedly false

statement was Duncklee's assertion that he had an arrest warrant.  Although it is undisputed that

Duncklee made that statement, he made the statement to Cannon, not Milner.  Cannon is no

longer a party to this lawsuit.  In *Suffield Development Associates*, the court held that the

elements of the tort were not met where the allegedly false statement was not made to the

plaintiff.  *Id.* at 778.  If Duncklee made a misrepresentation, he made it in gaining access to the

house, an interaction that only involved Cannon.  If Duncklee later made a statement to Milner

about an arrest warrant, there was no reliance, because Duncklee did not make the statement to

gain access to the home, and he in fact did have the authority to arrest Milner.  In addition, there

is evidence that Duncklee thought a capias was equivalent to an arrest warrant.  *See* Duncklee's

Exhibit A (Duncklee Deposition), p. 16, lines 13-16.  Indeed, it is a type of arrest warrant, in that

it authorizes arrest.  Finally, there is no evidence that Officers Peckham and Schneider made a

statement at all, let alone to Milner.  Based on the record evidence, reasonable jurors could not

find for Milner on this claim; thus, summary judgment in favor of all defendants is proper.

4.      *Trespass Claim*

 Trespass has four elements: (1) an ownership or possessory interest in land; (2) invasion,

intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3)

intentional intrusion or invasion; and (4) a direct injury as a result of the alleged invasion or

intrusion.  *Timber Trails Associates v. Connecticut Light & Power Co.*, 2006 WL 1360015, 3

(Conn. Super. 2006).  Trespass requires a direct injury to the property itself by force.  *Lake*

*Garda Improvement Ass'n v. Battistoni*, 160 Conn. 503, 516 (1971).  There is some authority to

suggest, however, that a plaintiff may recover nominal damages even if he is unable to show

direct injury to the property.  *See Conway v. American Excavating, Inc.*, 41 Conn. App. 437, 446

(1996).

Having entered summary judgment in favor of defendants on all federal claims, I decline

to exercise supplemental jurisdiction to entertain Milner's trespass claim.  I am dismissing that

claim without prejudice to Milner pursuing a claim for nominal damages in state court.

**IV.     Conclusion**

Milner's motion for summary judgment (**doc. # 125**) is **DENIED**.  Defendants' motions

for summary judgment (**docs. # 127 and 147**) are **GRANTED**, except to the extent that I am

dismissing Milner's claim for trespass without prejudice to him pursuing it in state court.  The

clerk shall close the file.


It is so ordered.

Dated at Bridgeport, Connecticut, this 8th day of November 2006.


/s/ Stefan R. Underhill
                        Stefan R. Underhill
                        United States District Judge